# Mayor and Aldermen of Birmingham *v.* Rumsey & Co.

*Action against Municipal Corporation, on Common Counts.*

1. *Exception to charges to jury.*—A recital in the bill of exceptions that the defendant "duly excepted to charges numbered 1, 2, and 4," does not show a separate exception to each charge, but is a general exception to them all, and can not avail unless each of them is erroneous.

2. *Municipal corporation; power to purchase fire-engine.*—The power to purchase a fire-engine, or other appliances for extinguishing fires, reasonably commensurate with the wants of the city, to be judged by the corporate authorities, is a necessary police function, and is inherent in every city government, as one of its incidental powers, unless expressly taken away.

3. *Same; execution on judgment against.*—When judgment is rendered against a municipal corporation, execution may be ordered to issue against it, as

against a private person; and under such execution, though property used for public purposes cannot be seized, such as hospitals, markets, cemeteries, &c., private property belonging to the corporation, and not useful or used for corporate purposes, may be seized and sold.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. WM. S. MUDD.

This action was brought by Rumsey & Co., against the mayor and aldermen of the city of Birmingham, to recover the sum of $1649.75, the agreed price of a fire-engine, hose carriage, &c., sold and delivered by plaintiffs to defendants in August, 1872; and was commenced on the 12th August, 1875. The complaint contained only the common counts. No pleas appear in the record. There was no controversy as to the sale and delivery of the engine, the price, or any of the other terms of the contract; and the only dispute grew out of the conduct of an attorney, to whom plaintiffs had remitted their claim for collection. It appeared that plaintiffs had sent their claim, for collection, to Hargrove, Lewis & Younge, attorneys-at-law; and said Younge, "without the authority or knowledge of plaintiffs, settled said claim or account with defendant, and took from said defendant, in payment of said claim or account, several drafts, or warrants of the city, drawn by the city clerk, on the treasurer, payable to the order of the plaintiffs," there being no money in the city treasury at the time. On one of these drafts, or warrants, the sum of $75 was paid to said Younge by the city treasurer, for which a credit was entered on it; the others were transferred by him to third persons, and appropriated by him to his own private use; and some of them had been received by the city in payment of taxes, from the persons to whom they had been transferred. Younge had absconded, and the plaintiffs had received no money in part payment of their debt.

On these facts, and others stated in the bill of exceptions, the court gave the following charges to the jury, which were in writing:

"1. That if the jury shall believe from the evidence that, in the month of August, 1872, the mayor and aldermen of the city of Birmingham ordered from the plaintiffs a fire-engine, two hose-carriages, hose and attachments, &c., for the value of which this suit is brought, for the use of fire-companies then organized in said city, and proposed to pay a stipulated price for the same; a part of said price to be paid in cash, and the balance to be paid at a future specified period; and if said jury shall further believe that the terms of said mayor and aldermen were accepted and agreed to by plaintiffs, and that said plaintiffs shipped said articles so

ordered to the said mayor and aldermen at Birmingham, and that they were in due time received by said mayor and aldermen, and by them turned over to said fire companies; and if said jury shall also believe from the evidence that, after said articles were received by said mayor and aldermen, to-wit, on the 9th day of April, 1873, the mayor and aldermen of said city of Birmingham held a meeting of their board, and at said meeting, by a resolution of said board, at that time adopted, and entered on the minutes of said board, it was ordered that the account or claim of said plaintiffs, for said articles so ordered by said mayor and aldermen, and by them received as aforesaid, be allowed and paid, said property being then in the ownership and possession, and under control of defendants,—that these facts, if proven, would create a liability on the part of said defendants to pay said plaintiffs for said articles.

"2. That if the jury shall believe, from the evidence, that the account or claim sued for in this action was sent by plaintiffs to Hargrove, Lewis & Younge, a firm of attorneys-at-law, to be by them collected for said plaintiffs; and that said Younge, one of said firm, received said account or claim, so sent by said plaintiffs to said attorneys for collection; and that said Younge, without the knowledge or authority of plaintiffs, settled said account or claim with said defendants, and took from said defendants, in payment of said account or claim of said plaintiffs, several drafts or warrants, drawn by the clerk of said city of Birmingham, on the treasurer of said city, payable to the order of plaintiffs; and there was at the time no money in the treasury of said city to pay said drafts or warrants; and that the same were not paid to said attorneys of plaintiffs in money, by the treasurer of said city, or by any other person, by authority of, or for the use and benefit of said defendants,—that then there was no legal payment of said account or claim, as against the said plaintiffs, that would discharge said defendants.

"4. That if the jury shall believe, from the evidence, that the account or claim sued for was sent by plaintiffs to said firm of Hargrove, Lewis & Younge, as attorneys-at-law, to be by them collected for said plaintiffs; and that said Younge, one of said firm, received said account or claim, and, in settling the same with defendants, received drafts or warrants drawn by the clerk of the city of Birmingham, on the treasurer of said city, payable to the order of said plaintiffs; and that said Younge, without the knowledge or authority of said plaintiffs, indorsed some of said drafts or warrants to third parties, in the name of said plaintiffs, in payment of debts which said Younge was owing to said par-

ties; and that said Younge, without authority or knowledge of plaintiffs, sold and transferred, without any indorsement, some of said drafts or warrants to third parties, and received money from said parties, in part or in whole, for said drafts or warrants; and that said parties, to whom said Younge indorsed, sold and transferred said drafts or warrants, received payment of the same from said defendants, in settlement of their taxes, or other dues owing by them to said city of Birmingham,—that this would not amount to a legal and valid payment of said account or claim, as against the plaintiffs in this suit, nor discharge the defendants from their liability to pay the same."

The bill of exceptions says, "the defendant then and there duly excepted to charges Nos. 1, 2, and 4;" and these charges are now assigned as error, together with that part of the judgment which orders execution to issue as on ordinary judgments.

WATTS & SONS, and D. S. TROY, for appellants.

TERRY & LANE, contra.

STONE, J.—In the court below there was a general exception to the three charges, numbered 1, 2, and 4. Under a uniform rule, this exception can not avail, unless each of the charges is tainted with error. We are not prepared to say there is error in either of them. The first is clearly free from error. It asserts, that the corporate authorities of the city of Birmingham had power as such to purchase a fire-engine, hose-carriages and attachments, and thereby fasten a legal charge or liability on the city. It is contended for appellant, that, at the time this contract was entered into, the corporate authorities were without power in the premises. Birmingham was incorporated as a city, having apparently large dimensions, by act approved December 19, 1871. Pamph. Acts, 229. That statute conferred the power "to make all by-laws and ordinances, of whatever kind, and upon whatever subject to them may seem right and proper for the good government of said city." A second statute, approved February 26, 1872 (Pamph. Acts, 233), after empowering the city government to establish gas-works and water-works for the city, or, by contract, to have the city supplied with gas and water, contains this general clause: "and to do every matter and thing which they may deem necessary for the good order and welfare of said city." Good government, and good order and welfare of a city, imply much more than mere preservation of social order. Sanitary regulations,

and appliances for extinguishing fires, to an extent reasonably commensurate with the city's wants, to be judged of by the corporate authorities, are certainly within the purview of good city government.   We do not wish to be understood as affirming that any specific grant of power is necessary to the performance of this very necessary police function.  We hold it is inherent in every city government, as one of its incidental powers, unless taken away by statute.—1 Dillon, Mun. Corp. § 94; *Robinson v. City of St. Louis*, 28 Mo. 488.

3. It is also assigned as error, and here urged as ground of reversal, that the Circuit Court, after rendering judgment against the city, ordered execution to issue for its collection. We do not hesitate to declare, that city property, owned or used by the corporation for public purposes, such as public buildings, public markets, hospitals, cemeteries, engine-houses, fire-engines and their apparatus, and other property, real or personal, of kindred utility, can not be taken in execution for debts of the city.   But, if the city owns private property, not useful or used for corporate purposes, such property may be seized and sold under final process, precisely as similar property of individuals is seized and sold. 2 Dillon, Mun. Corp. § 446.   If there be none, or an insufficient amount of such property to satisfy the debts of the corporation in judgment, then the creditor's coercive remedy is *mandamus*, to compel a levy, assessment, and collection of a tax, to pay the judgment.—2 Dillon, Mun Corp. § 685; Herman on Executions, § 364.   The Circuit Court did not err, in ordering execution to issue on the judgment rendered in this case.   Should the process be abused by a levy on property of the corporation used for public purposes, the law affords the city ample means for arresting such unauthorized use of the execution.

The judgment is affirmed.