[No. 15294.    In Bank.—November 10, 1893.]

H. M. KEYES ET AL., RESPONDENTS, v. HENRY E. CYRUS ET AL., APPELLANTS.

ESTATES OF DECEASED PERSONS—PROBATE HOMESTEAD—EXEMPTION FROM FORCED SALE—DEBTS OF WIDOW.—A homestead set apart to the widow of a decedent by the probate court, under the provisions of section 1465 of the Code of Civil Procedure, is exempt from forced sale for her debts contracted previous to the death of her husband as well as for his debts.

ID.—OBJECT OF HOMESTEAD LAW.—The object of the homestead law is to protect the family in the right to preserve their home, and it will be assumed that any legislation upon the subject of the homestead is intended for its protection, and that when the legislature has made provision for setting apart a homestead out of the property of a decedent, it was its intention that it should be exempt from forced sale.

ID.—REMEDIAL STATUTES—LIBERAL CONSTRUCTION.—Homestead statutes being remedial in their nature are to be construed liberally and in favor of carrying out the manifest purpose of the legislature, rather than that their operation be restricted to the strict letter in which they are framed.

ID.—CONSTRUCTION OF CODES.—Section 1240 of the Civil Code, which declares that "the homestead is exempt from execution or forced sale, except as in this title provided," is not in terms limited to the homestead selected by the parties, but applies to every homestead, whether selected and recorded by the voluntary act of the parties or by an order of the probate court under the provisions of section 1465 of the Code of Civil Procedure.

APPEAL from a judgment of the Superior Court of Sonoma County.

The facts are stated in the opinion of the court.

*Barham & Bolton*, for Appellants.

*Rose & Pond*, and *J. W. Oates*, for Respondents.

HARRISON, J.—July 22, 1889, M. M. Keyes and Barbara Keyes, his wife, made their promissory note to John Cyrus for seven thousand one hundred and seventy-five dollars, and as security for its payment executed to him a mortgage upon certain lands in Sonoma county. M. M. Keyes died October 17, 1889, and his widow Barbara was appointed administratrix of his estate and continued to act as such until August 10, 1891, when her final accounts were settled, and she was discharged

from her trust. No homestead had been selected in the
lifetime of said Keyes, and on June 30, 1890, the supe-
rior court for Sonoma county upon due proceedings had
therefor, by its order made that day, set apart as a
homestead for the use of the said Barbara certain lands
belonging to the estate of said Keyes other than those
included in the mortgage, and on the 7th of July a copy
of the said order was recorded in the office of the county
recorder. The property so set apart as a homestead
was community property of the said Barbara and her
husband, and he left no minor children surviving him.
At the time the land was set apart to her Barbara was
residing thereon, and continued to reside there until
December 17, 1891, when she conveyed the premises to
the plaintiffs. After the death of Keyes, Cyrus pre-
sented to the administratrix a claim against his estate
upon the note and mortgage, which was duly allowed
and approved, and thereafter, in an action instituted in
the said superior court for the foreclosure of the mort-
gage, a judgment was rendered against said Barbara as
administratrix, and also individually, for the amount of
the note, and directing a sale of the mortgaged premises
and the application of the proceeds thereof upon the
judgment, and, if there should be any deficiency, that
it should be docketed against said Barbara. Under this
judgment the mortgaged lands were sold June 15, 1891,
and the proceeds being insufficient to satisfy the judg-
ment, the deficiency thereof, amounting to three thou-
sand seven hundred and ninety-eight dollars, was
docketed against Barbara on the 16th of June, 1891.
January 5, 1892, the defendants herein, to whom Cyrus
had assigned his judgment, caused an execution to be
issued on this deficiency judgment and placed in the
hands of the sheriff, under which he levied upon the
lands that had been set apart to Barbara, and was ad-
vertising the same for sale when the plaintiffs brought
this action to restrain the said sale. Judgment was ren-
dered in their favor, and the defendants have appealed.

The cause is brought here upon the judgment-roll

alone, and the question presented for determination is whether a homestead set apart to the widow by the superior court under the provisions of section 1465 of the Code of Civil Procedure is liable to forced sale for a debt contracted by her previous to the death of her husband. The affirmative of this proposition is maintained by the appellants, upon the ground that the section of the statute authorizing the court to set apart a homestead out of the estate of a decedent contains no express declaration that when set apart it shall be exempt from forced sale, while on the part of the respondents it is contended that every legal homestead, whether made so by voluntary selection or by the action of the court, is exempt from a forced sale.

The word "homestead" has both a popular and a legal signification. In its popular sense it signifies the place of the home—the residence of the family: "it represents the dwelling-house at which the family resides, with the usual and customary appurtenances, including the outbuildings of every kind necessary or convenient for family use, and lands used for the purposes thereof." (*Gregg* v. *Bostwick*, 33 Cal. 227; 91 Am. Dec. 637.) It is in this sense that the word is used in the constitution, and also in the statute; in other words it is the actual homestead to which they refer, and to which they purport to add certain legal incidents. The term itself is nearly as old as the English language, but its use in legislation is quite modern, and is peculiarly American. The ultimate object of all legislation respecting the homestead is to protect the family in the right to preserve their home, both from their own improvidence, and also from the rapacity of their creditors; and, in view of this fact, it is proper to assume that any legislation upon the subject of the homestead is intended for its protection, and that when the legislature has made provision for setting apart a homestead out of the property of a decedent it was its intention that it should be exempt from forced sale. Such statutes, being remedial in their nature, are to be con-

strued liberally, and in favor of carrying out the
manifest purpose of the legislature, rather than that
their operation be restricted to the strict letter in
which they are framed. The policy of such legislation
has never been questioned. It is in furtherance of the
welfare of the state that its citizens shall be a perma-
nent body, whose individual interests in its prosperity
and development shall, as far as possible, be identified
with the public interest.

A consideration of the terms used in the chapter of
the Code of Civil Procedure in which section 1465 is
contained corroborates the conclusion that the legisla-
ture intended that the homestead set apart under its
provisions should have the legal incident of exemption
from forced sale. The chapter is itself entitled: " Of the
provision for the support of the family and of the
homestead," and the heading to article I of the chapter
in which this particular section is found is: " Of the
provision for the support of the family." These head-
ings are a portion of the statute, and may be examined
for the purpose of determining the particular intent of
the legislature with regard to the chapters in which
they are placed. (*Barnes* v. *Jones*, 51 Cal. 306.) Section
1465 itself provides that if no homestead has been se-
lected in the lifetime of the decedent the court must
select a homestead " for the use of the surviving hus-
band or wife and the minor children," and section 1466
provides that if the amount set apart under this section
be insufficient for the *support* of the family the court
must make a further allowance for their maintenance,
thus showing that whatever is set apart under section
1465 is for the " support" as well as the " use" of the
family. The authority given to the court in the first
part of section 1465 to set apart for the family " all the
property exempt from execution, including the home-
stead selected," implies that the property, when set
apart, is exempt from execution; and the subsequent
provision therein for setting apart a homestead in case
none has been selected during the lifetime of the dece-

dent also implies that such homestead has the same exemption from forced sale as a homestead that had been selected by the decedent in his lifetime. The manifest object of the section is the support of the family, and to make provision for their support and maintenance. These demands of the family are deemed superior to those of heirs or creditors. "Setting apart a homestead is a part of the probate proceeding as much as is a family allowance." "It is a right bestowed by the beneficence of the law of this state for the benefit of the family." (*Estate of Moore*, 57 Cal. 442.) A homestead may be set apart to the widow, even though the estate be insolvent, and the property so set apart constitute the entire estate of the decedent; but if the homestead thus set apart to her could be immediately taken in execution by one of her creditors it would fail to be available for her use or support, and it might happen that her creditor would fare better than a creditor of the decedent whose money had perhaps been used to purchase the very property so set apart. The question here presented was not involved in *Estate of Walley*, 11 Nev. 260, and what was said thereon in the opinion in that case was not concurred in by the full court.

As the general policy of the law is to protect the homestead of the family the foregoing construction of this section harmonizes with that policy, and is consistent rather than in conflict with the provisions of the Civil Code for creating a homestead. Those provisions do not, either in terms or by implication, make that the exclusive mode of impressing the actual homestead with the legal incident of exemption from forced sale. They relate exclusively to its voluntary selection, and afford a mode of designating it and making it a matter of record, so that the world may have notice of the property which constitutes the actual homestead. A homestead selected under these provisions has also certain other incidents in addition to its exemption from forced sale, such, for example, as the character of the estate created thereby, and the right of survivorship

incident to that estate.   Section 1240 of the Civil Code, which declares that "the homestead is exempt from execution or forced sale, except as in this title provided," is not in terms limited to the homestead selected by the parties, and, as the codes are to be construed as a single statute (Pol. Code, sec. 4480), the provisions of this section must be held to apply to every homestead, whether selected and recorded by the voluntary act of the parties or by an order of the superior court.

The judgment is affirmed.

McFARLAND, J., DE HAVEN, J., GAROUTTE, J., FITZGERALD, J., and PATERSON, J., concurred.

BEATTY, C. J., dissenting.—I dissent upon grounds which are fully stated in my opinion in *Estate of Walley*, 11 Nev. 260.

The homestead set apart by the probate court goes to the surviving husband or wife freed of all liability for any debt of the deceased spouse; but there is no provision of law exempting it from liability for debts of the survivor, whether contracted before or after the order setting it apart, and nothing therefore to prevent the operation of the general rule prescribed by section 688 of the Code of Civil Procedure.

Nor is it at all necessary in order to subserve the general policy of the law to construe the statute as it is construed in the opinion of the court.   When a homestead has been set apart by the probate court to a widow, and thus exempted from the claims of creditors of the deceased husband, if she desires to exempt it from the claims of her own creditors she has only to make a declaration as head of a family, if she has children or other dependent relatives residing with her, in which case it is exempt to the full value of five thousand dollars; or if she has no children or dependent relatives she can, like others similarly situated, secure exemption to the extent of one thousand dollars.   This

gives her all the advantages of other persons in her situation, and I can see no reason for giving her any greater right as against the debts that she voluntarily contracts.