[S. F. No. 771.   In Bank.—March 25, 1898.]

In the Matter of the Estate and Guardianship of CREIGHTON
E. HAMILTON, a Minor.   JOHN J. CRAWFORD, Ap-
pellant.

GUARDIAN AND WARD—SALE OF REAL ESTATE—PETITION.—A petition for an
order of sale of the real estate of a minor need not show how
much of his personal estate remains undisposed of.   Section 1537
of the Code of Civil Procedure, requiring such statement in cases
of sales by executors and administrators, is inapplicable to sales
by guardians, which are governed, as to the contents of the petition,
by section 1781.

ID.—ORDER OF SALE.—An order directing a sale "for cash" sufficiently fixes
the terms of the sale, within the requirements of section 1791 of
the Code of Civil Procedure.

ID.—PUBLICATION OF ORDER TO SHOW CAUSE.—Under sections 1783 of the
Code of Civil Procedure, the order to show cause why an order
of sale of a minor's real estate should not be granted need only be
published for three weeks.   Sections 1537 and 1544, requiring a pub-
lication for four weeks, in case of sales by executors and adminis-
trators, are not applicable to guardians' sales.

ID.—SALE OF UNDIVIDED INTEREST—OBJECTION TO CONFIRMATION.—A pur-
chaser at an auction sale of a lot of land, that was not capable
of being partitioned, and of which the title to an undivided in-
terest was in a minor, which interest was being sold by his guardian
under proceedings in the matter of his estate, cannot object to the
confirmation of the sale of such interest merely because the land
was sold as an entirety, when the condition of the title was dis-
closed by the auctioneer at the time of the sale, with the statement
that bids for the land would be considered as *pro rata* bids for the
respective interests therein, and the *pro rata* amount so received was
an adequate price for such interest.

ID.—PROBATE HOMESTEAD—GUARDIAN MAY SELL.—Under sections 1465 and
1468 of the Code of Civil Procedure, a probate homestead, set
apart by the court from community property for the use of the
surviving wife and minor children, belongs one-half to the widow
and the remainder in equal shares to the children.   The widow, and
children upon attaining majority, may dispose of their respective
interests; and during their minority the children's interests may be
sold by their guardian, under proper proceeding for the sale thereof
had in the matter of their estates.

ID.—PROBATE OF WILL—SERVICE OF NOTICE.—Under section 1304 of the Code
of Civil Procedure, personal service of copies of the notice of the
time and place for probating a will is equivalent to service by mail-
ing.   Section 411 of that code, providing for the service of a sum-
mons upon an infant, has no application to the service of such no-
tice.

ID.—CHILD EN VENTRE SA MERE.—The law makes no provision for the service of such notice upon a child who at the probate of the will is *en ventre sa mere*, and none is necessary.

ID.—PROOF OF SERVICE—IDENTITY OF HEIR.—Proof of service of such notice upon "Helen" Majora Hamilton is sufficient to give jurisdiction in the probate proceedings over an heir whose real name was "Ellen" Majora Hamilton, it being shown that she was the one actually served and was sometimes known as "Helen." The identity of the persons served was also sufficiently shown by the insertion in the affidavit of service of her middle name in full.

ID.—AFFIDAVIT OF PUBLICATION.—An affidavit of publication reciting that the notice of probate was published "fourteen consecutive times, to wit, from the 18th day of October, 1889, to and until the 2d day of November, 1889, both days inclusive, on the 18, 19, 21, 22, 23, 24, 25, 26, 28, 29, 30, 31st October, and 1st and 2d day of November, 1889, every day said newspaper was published during said time, Sundays and holidays excepted," sufficiently shows a publication on every day the paper was regularly issued, as required by section 1705 of the Code of Civil Procedure, when it is admitted that no publication was made on Sundays and holidays.

APPEAL from an order of the Superior Court of Alameda County confirming a sale of the real estate of a minor and from an order refusing a new trial. W. E. Greene, Judge.

The facts are stated in the opinion.

Crittenden & Van Wyck, for Appellant.

Reed & Nusbaumer, and Minor & Ashley, for Respondent.

HAYNES, C.—Upon the petition of W. C. Murdoch, the guardian of said minor, an order was made directing the sale of certain personal and real property of said minor, a sale was had thereunder, and the appellant became the purchaser of certain of the real estate, and afterward opposed the confirmation of the sale on numerous grounds. The sale was confirmed, and appellant's motion for a new trial was overruled, and this appeal is from the order confirming the sale, and from the order denying his motion for a new trial.

James H. Hamilton died seised of the real property in question, and of other estate, personal and real, in different parts of this state. His estate was administered and distributed, to his widow one-half, and to each of his four children one-eighth. Said minor, Creighton E. Hamilton, is one of said

children. Two others are also minors, and one, Ellen M., has attained her majority. Said W. C. Murdoch is also the guardian of the other two minors, and in a separate proceeding also obtained an order for the sale of their interests in the same property. The widow and Ellen M. were also desirous of selling their interests in the property involved in this appeal, and agreed that the whole might be sold at auction, and the proceeds distributed according to their several interests.

The sale was conducted by W. J. Dingee, a real estate agent, at his salesrooms in the city of Oakland, at which time and place other parcels of real estate owned by other parties were also sold, and all were shown upon a printed catalogue. The orders of sale of the interest of the minors in the property in question were read, and those present, including appellant, were informed that the widow and adult daughter would also sell their interests, that the whole property would be offered and bids received for the whole, and the bids apportioned to the several interests, and that the widow and adult daughter would convey their interests to the purchaser upon confirmation of the guardian's sales of the interests of the minors.

It was also announced, as testified by some of the witnesses, that the insurance upon the property would be transferred to the purchaser, and that an abstract of title of the property down to December 5, 1888, would go with the property; though as to what was said as to the abstract of title there is a material conflict, the purchaser claiming that the representations were that the title was perfect, that an abstract would be furnished, and time given for examination of the title. That the catalogue of property to be sold on that occasion specified, as to other property, that the sale was subject to an examination of title is clear, but whether the property here in question was included is controverted. An abstract brought down to date was furnished, however, and placed in the hands of the purchaser's attorneys, who reported specifying some seventeen objections thereto, and upon the hearing of the motion to confirm the sale of the interests of the minors, evidence was heard and these objections considered—except as to some which were cured and waived—and the court made findings upon all the controverted facts affecting the title. These findings are eighty in number,

though the number specified as not justified by the evidence are grouped under ten specifications.

The grounds upon which a reversal is sought are grouped by counsel for appellant under three general heads, as follows: "1. Irregularities in the proceedings in the guardianship matter leading up to the order directing the sale; 2. Irregularities in the conduct of the sale itself; 3. Want of power in the court to sell the property offered because it found the land to be the minor's homestead."

These points will be considered in the order stated.

1. Irregularities in the proceedings prior to the sale.

(a) It is urged that the guardian's petition upon which the order of sale is based does not show how much of the personal estate of the minor remained undisposed of.

. This petition was filed October 18, 1895. It shows that on September 24, 1895, an inventory and appraisement of all the estate of the ward, Creighton E. Hamiltòn, was filed in said court, and this inventory was made part of the petition by reference thereto as if incorporated therein; so that the court was fully advised as to the entire estate of the ward. Counsel, however, err in supposing that the provisions of section 1537 of the Code of Civil Procedure, requiring the petition to show the amount of personal estate and how much remains undisposed of, are applicable here. That provision relates to sales by executors and administrators, and not to guardians' sales. Whether the real or personal estate of the ward shall be sold is in the discretion of the court (Code Civ. Proc., sec. 1777), and section 1781 provides as follows: "To obtain an order for such sale the guardian must present to the court in which he was appointed guardian a verified petition therefor, setting forth the condition of the estate of his ward, and the facts and circumstances on which the petition is founded, tending to show the necessity or expediency of a sale."

Besides, the reasons requiring that the personal estate of a deceased person should be first sold do not apply to the estates of a ward. In the latter case the court, in determining whether the real or personal estate should be sold, should ordinarily be governed by the same reasons which would influence a competent adult in disposing of his own property. A determina-

tion of what is for the best interest of the ward must control.

(b)  It is contended that the order of sale does not fix the terms of sale. The order directs a sale "for cash." The statute (Code Civ. Proc., sec. 1791) authorizes guardians' sales to be for cash, or part cash, "as in the discretion of the court is most beneficial to the ward."

(c)  It is contended that the order to show cause why an order of sale should not be granted was published but three weeks instead of four. The publication for three weeks was in precise accordance with section 1783 of the Code of Civil Procedure. Section 1789 of the Code of Civil Procedure, cited by appellant, makes the provisions of the title concerning the estates of deceased persons applicable only as to matters of procedure not provided for in the chapter relating to guardians and wards, and hence sections 1537 and 1544 of the Code of Civil Procedure, cited by appellant, have no application to this case in the particulars specified by appellant.

2.  Alleged irregularities occurring at the sale.

(a)  Appellant complains that the property purchased by him, viz., a dwelling-house and the lot on which it is situated, was sold "in one lump," the interest of the minor, an undivided one-eighth, not being offered separately; that an intending purchaser was obliged to buy not simply the one-eighth, but also the remaining seven-eighths held by others.

Appellant, however, was not compelled to bid. He does not complain that he was misled, or misunderstood what was being offered for sale. He bid for and purchased the whole property, and knew what he was bidding for. The question is one with which he has no concern, unless he can show that because of the mode in which the interest of the minor was sold he has not acquired a good title to that interest. I see no reason why the mode adopted was not proper and well calculated to obtain the best price for the interest of the ward. The property was incapable of partition, and if this minor's interest alone had been sold the purchaser could only separate his interest from that of the others by a sale of the whole for the purposes of a partition. It was announced at the time the property was offered that bids would be received for the whole and treated as *pro rata* bids for the several interests. The court found

that such *pro rata* bid for the interest of the minor was not disproportionate to its value, and that an offer of ten per cent more, exclusive of the costs of a new sale, could not be had, and that the proceedings at the sale were fair. The return made by the guardian was of the sale of the interest of said ward for the sum of twelve hundred dollars, as though it alone had been sold. I see no error in this part of the proceeding; though it is, perhaps, proper to say that this mode should not be resorted to where the undivided interest of the ward is capable of partition without sale and without injury, or unless it reasonably appears that the best interests of the ward would be promoted by a sale of the whole property at the same time, and all others interested agree to that course.

3. It is further contended that this sale should not be confirmed because of false representations made by the auctioneer, viz: "That the minor owned and held the legal title to an undivided eighth."

Counsel say: "This statement of the auctioneer could not have been true, for either one of two reasons: 1. The land was a homestead, and in that event the minor's title to his one-eighth was subject to the homestead rights of his mother, sisters, and brother; 2. The land still constitutes part of his father's estate, not legally administered and remains subject to such administration."

All the property of which the ward's father, James H. Hamilton, died seised was community property. The court of its own motion, set aside by an order duly made on February 6, 1893, the house and lot in question in which the family resided, as a probate homestead for the exclusive use of the surviving wife, Sarah Jane Hamilton, and Ellen Majora, Rosa, Creighton E., and James H. Hamilton, the minor children of said decedent.

I see no ground upon which the validity of said probate homestead can be attacked, and therefore conclude that it is not part of the estate of James H. Hamilton, deceased, unadministered.

Prior to the proceedings for the sale of the interest of Creighton E. and of Rosa and James H. in said property, Ellen Majora had attained majority. The petition for an order to sell the

interest of Creighton E. (the only one in the record) alleges that the adults, the widow and Ellen Majora, are willing and desirous of selling their respective interests, and that an application for an order to sell the interests of the other minors had been or was about to be presented.

The question to be determined is whether the homestead can be sold, all who are interested in it concurring and uniting in the sale, some of them being minors.

This is not a homestead created under the Civil Code, but is a probate homestead set apart by the court under the provisions of section 1465 of the Code of Civil Procedure, for the use of the surviving wife and the minor children; and section 1468 of the same code provides as follows: "When the property is set apart to the use of the family, in accordance with the provisions of this chapter, if the decedent left a widow or surviving husband, and no minor child, such property is the property of the widow or surviving husband. If the decedent left also a minor child or children, the one-half of such property shall belong to the widow or surviving husband, and the remainder to the child, or in equal shares to the children, if there be more than one. If there be no widow or surviving husband, the whole belongs to the minor child or children. If the property set apart be a homestead, selected from the separate property of the deceased, the court can only set it apart for a limited period, to be designated in the order, and the title vests in the heirs of the deceased, subject to such order."

Under this section, if there had been no minor child or children, the widow would have taken the homestead property absolutely, and no reason is perceived why she should not, in such case, have disposed of it at her pleasure, and in the same manner in which she could dispose of any other property to which she had absolute title, and in like manner any of the children, upon attaining majority could dispose of their interests, but not to the prejudice of others who had not reached their majority. "The homestead is a place of abode for the family, and no act of any member of the family can in any way prejudice the rights of the others to occupy it. It must remain intact until the youngest child has reached majority. Hence, it is not competent for either of the other cotenants to

have a partition until that period has been reached." (*Hoppe v. Fountain*, 104 Cal. 101.) In that case it was also said: "As the owner of an undivided interest in the land, it was competent for the mother to mortgage or convey such interest. She could not, however, confer upon her grantee or mortgagee any greater rights in the premises than she herself had."

If the mother may mortgage or convey her interest, it cannot be questioned that upon reaching majority any of the children may do so, and therefore, when all have reached majority, the mother and children may have partition, or may sell the property freed from its homestead character.

The moment the probate homestead was set apart for the use of the widow and the minor children out of the community property the title to the homestead vested in them in the proportions specified in section 1468 of the Code of Civil Procedure, and the shares of the minors at once became their property, and their several interests therein became part of their respective estates to be cared for by their several guardians.

Section 1777 of the Code of Civil Procedure provides: "When the income of a ward's estate under guardianship is insufficient to maintain the ward and his family, or to maintain and educate the ward when a minor, his guardian may sell his real or personal estate for that purpose upon obtaining an order therefor."

There is no restriction in this section as to the character of the property that may be sold, and where the whole title to the homestead is vested in one minor—as it may be—there is nothing to prevent a sale thereof if his circumstances require it; and hence where the title is vested in several minors, each of whom, if the sole owner, would be benefited by a sale, whether upon the grounds mentioned in the above section, or for the reasons mentioned in section 1778 of the Code of Civil Procedure, the interest of each may be sold under proper orders for that purpose.

In this case, as we have seen, orders were made for the sale of the interests of each of the minors, and the widow and adult daughter consented to a sale of their interests at the same time, so that no one having an interest in the homestead would be injured or have any homestead right violated by the sale. The homestead was created for the benefit of these minors

as well as of the widow, and it would be a sad commentary upon a law intended for the benefit of these minors if it were beyond the power of the court, when their interests required it, to direct a sale of it. Even the provisions of the Civil Code relative to other homesteads, to which appellant refers, impose no restriction upon their voluntary alienation, save the concurrence of both spouses manifested in the mode prescribed by the statute.

We are not referred to any case in this court where the power of the court to order the sale of a minor's interest in a probate homestead was directly involved, though in *Hoppe v. Fountain, supra*, it was said, after deciding that a partition of such homestead could not be had until all the cotenants had reached majority, that: "We do not mean to say that no case can arise where a court would not authorize the partition or sale of a homestead. Circumstances might exist where it would be the duty of the court, for the benefit of the minor, to decree a partition or order the interest of the minor to be sold." This was a wise qualification of the comprehensive language of the decision, and intended to prevent a narrow and ill-considered application of it to other cases where different facts were involved. All the interest in the homestead having been sold at the same time, this objection to the confirmation of the sale was properly overruled. The distinction between this and the numerous cases cited by appellant, involving homesteads created by declaration under the provisions of the Civil Code, is too apparent to require discussion. That the exemption from forced sale is common to both classes of homesteads, as held in *Keyes v. Cyrus*, 100 Cal. 322, 38 Am. St. Rep. 296, does not affect the question here presented. In this case the alienation is voluntary, and is made by and for the benefit of the ward, and is in no sense adversary. (*Scarf v. Aldrich*, 97 Cal. 360; 33 Am. St. Rep. 190.)

It is further contended on behalf of appellant that the estate of James H. Hamilton was not legally administered, because the court never acquired jurisdiction over the estate, and that therefore the land in question constitutes part of his estate.

Hamilton died testate, and his will was offered for probate. Notice of the time and place of probate was personally served upon the widow and the three children then in being. It is con-

tended that the service should have been by mailing. Section 1304 of the Code of Civil Procedure provides for the service of such notice by mailing, but said section further provides: "Personal service of copies of the notice at least ten days before the day of hearing is equivalent to mailing." The service of the notice was proper and sufficient. Section 411 of the Code of Civil Procedure, providing for the service of a summons upon an infant, 'has no application to the service of these notices which are specifically provided for.

One of the children of said testator was, at the time of the probate of the will, *en ventre sa mere;* and it is said there was no service upon it. It is not suggested, however, that the will could not be probated until after its birth, nor do counsel point out any mode by which service could have been made. The law does not require the performance of impossibilities or absurdities. Besides, said child did not take its interest in the property in question under the will, but by virtue of the order of the court setting it off as a probate homestead, and that order cannot be questioned if the court had jurisdiction to administer the estate. It is said, however, that the notice of the time and place when and where the will would be probated was served upon "Helen" Majora Hamilton, not upon "Ellen" Majora Hamilton. Ellen was examined as a witness upon the hearing of the motion to confirm the guardian's sale, here under review, and testified, and the court found that she was sometimes called Helen, and that said notice was personally served upon her. The service having been made upon the right person, it was at most a misnomer which did not affect the jurisdiction of the court. Besides, her identity was rendered sufficiently certain in the affidavit of service by the insertion in full of her middle name, "Majora," if not by the *idem sonans* of the names Ellen and Helen.

It is also contended that jurisdiction was not acquired in the probate proceedings because the affidavit of the publication of said notice is defective, or shows a defective publication.

The affidavit of publication shows that the notice was published "fourteen consecutive times, to wit, from the 18th day of October, 1889, to and until the second day of November, 1889, both days inclusive on the 18, 19, 21, 22, 23, 24, 25, 26, 28,

29, 30, 31st October, and 1st and 2d day of November, 1889, every day said newspaper was published during said time, Sundays and holidays excepted."

Appellant's contention is that the proof of publication does not show that it was published every day the paper was regularly issued, as required by section 1705 of the Code of Civil Procedure, though he admits that it was proved, upon the hearing of the motion to confirm the guardian's sale herein, that the paper in which said notice was published was not issued on Sundays or holidays, and therefore the publication in fact complied with the statute.

In view of this evidence, which was received without objection, it is not necessary to consider or decide whether a judgment attacked collaterally may be supported by parol evidence showing that jurisdiction was in fact acquired, nor the other question as to the presumptions that may be indulged in support of a judgment so attacked. It may be said, however, that this evidence simply explains an ambiguity in the language of the affidavit by showing that the words, "Sundays and holidays excepted," were intended to apply to the publication of the paper, and not to the omission of the "notice" from the issues of the paper published on Sundays and holidays.

The controversy as to the representations made by the auctioneer as to the title of the property, and whether the statement in the catalogue, "ten days allowed for search," applied to this property, need not be considered, inasmuch as an abstract was furnished and time given for its examination, and all the objections made to the title were heard and considered. Besides, as to the interests of the widow and adult daughter, the sale was private, and subject to the general conditions expressed in the catalogue; and therefore it was necessary to dispose of these objections, since the purchaser, having bid for and purchased the whole, was not bound to accept the part belonging to the minors if valid objections existed to the title of the part not sold under the order of the court.

A careful examination of the record reveals no valid objections to the title, or reasons of any character why the sale should not have been confirmed, and we therefore advise that the judgment and order appealed from be affirmed.

Searls, C., and Belcher, C., concurred.

For the reasons given in the foregoing opinion the order confirming said sale and the order denying appellant's motion for a new trial are affirmed.

McFarland J., Garoutte, J.

Temple, J., dissented.

HARRISON, J. concurring.—I concur. Whether the will of James H. Hamilton was properly admitted to probate is a question which does not arise in this case. The petition of Gordon to be appointed administrator of his estate sufficiently set forth the jurisdictional facts giving the court jurisdiction to make the appointment and the order appointing him was made after the notice required by the statute had been given. The insertion in this order and in the letters of administration issued to him, of the words "with the will annexed," affected his authority only to the extent that he might attempt to carry out any provisions of the will which were at variance with the provisions of the statute in cases of intestacy. The court, therefore, had jurisdiction of the estate, and to set apart the land in question as a homestead. As the interest of the minor in these lands does not in any respect depend upon the will, it is immaterial whether it was properly admitted to probate or not.

Van Fleet, J., concurred.