[S. F. No. 2683.   Department One.—June 3, 1903.]

## HIBERNIA SAVINGS AND LOAN SOCIETY, Appellant, v. CITY AND COUNTY OF SAN FRANCISCO, Respondent.

TAXATION—POWER OF STATE—ORDERS UPON U. S. TREASURY—NON-EX-EMPTION.—Checks or orders drawn upon the treasurer or assistant treasurer of the United States, payable on demand, as a mode of paying an obligation of the United States, are not exempt from taxation under the laws of the United States or under the state constitution, and are subject to taxation by state and municipal authorities as ''solvent credits'' of the holder.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   J. C. B. Hebbard, Judge.

The facts are stated in the opinion of the court.

Tobin & Tobin, for Appellant.

The state cannot tax a certificate of indebtedness issued by the federal government and held by an individual.   (*People v. Hoffman,* 7 Wall. 16; *People v. Board of Supervisors, etc.,* 7 Wall. 26; *People v. Commissioners of Taxation,* 2 Black, 620.)

Franklin K. Lane, City Attorney, and W. I. Brobeck, for Respondent.

Exemptions from taxation are to be strictly construed. (*People v. Commissioners,* 76 N. Y. 76.)   The right of exemption is limited by the principle that state legislation which does not impair usefulness and capability of the instrument to serve the government is not within the rule of prohibition. (*National Bank v. Commonwealth,* 9 Wall. 353.)

ANGELLOTTI, J.—This action was brought by the plaintiff to recover certain taxes for the fiscal year 1899-1900, paid by it under protest.   Defendant demurred to the complaint, and the demurrer to the count in which it was sought to recover $1,986.55 taxes, paid by plaintiff under protest upon two checks or orders of the treasurer of the United States, was

sustained. Judgment was thereupon entered for defendant, so far as said count was concerned, and plaintiff appeals therefrom. The only question presented by the appeal is as to whether or not these checks or orders were taxable by the state or municipality.

The orders, as is shown by the complaint, were included in the assessment against plaintiff as "solvent credits." They were drawn January 1, 1899, by the treasurer of the United States in favor of plaintiff, addressed to "The Treasurer or an Assistant Treasurer of the United States," and directing the payment to plaintiff of the amount named therein and the charging of the amount to "Treasurer U. S. in General Account." Upon each of the orders was an indorsement to the effect that the same, properly countersigned and indorsed, is payable any time within four months from its date at the treasury or any sub-treasury in the United States, and that after that period it is payable only at the United States treasury at Washington. One of the orders was for $120,000, in payment of quarter-yearly interest, due January 1, 1899, on United States four-per-cent consols of 1907, and the other was for $1,875, in payment of quarter-yearly interest, due January 1, 1899, on United States three-per-cent consols of 1908. These orders were, so far as the complaint shows, delivered to and accepted by plaintiff immediately upon being drawn, and were retained by it until after the first Monday of March, 1899, and, being in the possession of and owned by plaintiff on said last-named date, were assessed by the assessor as "solvent credits" belonging to plaintiff.

Plaintiff's claim is, that the same were exempt from taxation by state or municipal authority, under the provisions of section 3701 of the Revised Statutes of the United States (U. S. Comp. Stats. 1901, p. 2480), which provides that "All stocks, bonds, treasury notes, and other obligations of the United States shall be exempt from taxation by or under state or municipal or local authority," the theory of plaintiff being, that these orders were "obligations" of the United States within the meaning of that word as used in that section.

It is manifest that these orders are not within the reason and scope of the rule forbidding such taxation by the states as may tend to destroy the powers of the national government

or impair their efficiency, a rule which exists independently of any statute of the United States, and which cannot be impaired by any state constitutional provision.

It is because, as declared by the United States supreme court in *McCulloch* v. *Maryland,* 4 Wheat. 316, "States have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control the operations of the constitutional laws enacted by Congress to carry into execution the powers vested in the general government," that government bonds and other promises of the government are beyond the taxing power of the states. The authority to borrow money on the credit of the United States is not only absolutely essential to the existence of the government, but is in the enumeration of powers expressly granted by the constitution (see *Banks* v. *Mayor,* 7 Wall. 16), and taxation by the states of the means employed by the government in the exercise of that power would tend to impair its efficiency. As was said by Chief Justice Marshall, in *McCulloch* v. *Maryland,* 4 Wheat. 316, "The right to tax the contract to any extent, when made, must operate on the power to borrow before it is exercised and have a sensible influence on the contract. . . . To any extent, however inconsiderable, it is a burden upon the operations of the government. It may be carried to an extent which shall arrest them entirely." Solely for this reason, a promise of the government, "securing the payment stipulated to the holder by the pledge of the national faith," in whatever form it might be, was always held to be exempt from taxation by the states. The only ground upon which it was held that United States notes and bills intended to circulate as money were exempt from taxation was, that the courts could not say that their usefulness and value as means to the exercise of the functions of government would not be injuriously affected by state taxation, and that it was therefore within the discretion of Congress to determine whether their usefulness as a means of carrying on the government would be enhanced by exemption from taxation. (*Banks* v. *Supervisors,* 7 Wall. 26.)

While the courts of the United States have been steadfast and vigilant in upholding a principle so essential to the existence of the national government, they have been as vigilant in confining the operation of that principle to those cases

where its application was necessary for the protection of some power of the government. In *National Bank* v. *Commonwealth*, 9 Wall. 353, a case involving the question of taxability of shares of stock of national banks, the supreme court said: "The principle we are discussing has its limitation, a limitation growing out of the necessity on which the principle is founded. That limitation is, that the agencies of the federal government are only exempted from state legislation so far as that legislation may interfere with or impair their efficiency in performing the functions by which they are designed to serve that government. Any other rule would convert a principle founded alone in the necessity of securing to the general government of the United States the means of exercising its legitimate powers into unauthorized and unjustifiable invasion of the rights of the state."

Although public lands of the United States are exempt from state taxation, it is well settled that where all the conditions for a patent from the government have been complied with, and nothing remains to be done but the issuance of the patent conveying the legal title, which can be obtained at any time by the donee or purchaser, he is to be treated as the beneficial owner of the land, and it is subject to taxation. In *Wisconsin Central R. R. Co.* v. *Price Co.*, 133 U. S. 496, the supreme court of the United States, in discussing this matter, said, through Mr. Justice Field: "This exception to the general doctrine is founded upon the principle that he who has the right to property, and is not excluded from its enjoyment, shall not be permitted to use the legal title of the government to avoid his just share of state taxation." (See, also, *Northern Pacific R. R. Co.* v. *Patterson*, 154 U. S. 130; Cooley on Taxation, p. 88; *Mitchell* v. *Board of Commissioners*, 91 U. S. 206; *Shotwell* v. *Moore*, 129 U. S. 590, 596.)

It is impossible to conceive of any reason why the taxation by the state of the orders in question would injuriously affect the power of the government to borrow money, or any other function of the government. They were not issued as a means of executing any constitutional power of the government. The transaction as to the quarter-yearly interest, for the payment of which they had been given by the government and received by the plaintiff, had been closed. The obligation of the gov-

ernment in regard thereto had been fully satisfied. The orders were simply a convenient mode of payment of the obligation. They were, for all practical purposes, the money itself. The only possible object to be attained by their exemption would be to enable the holder to avoid its just share of state taxation. They are clearly within the reason for the exception to the general rule stated in *Wisconsin Central R. R. Co.* v. *Price Co.,* 133 U. S. 496, and hereinbefore set forth—for plaintiff had the right to the immediate possession of the money evidenced thereby, and was not excluded from such possession, except so far as it might be excluded by a desire to escape taxation. The case of *Banks* v. *Mayor,* 7 Wall. 16, relied on by plaintiff, is not in point. The certificates there involved were certificates of indebtedness, issued by the government, payable in one year or earlier at the option of the government, and bearing interest, and were issued at a time when full money payment was impossible, and the government was using its credit to obtain further time. They were promises of the government, to the observance of which the national faith was pledged, undistinguishable from the bonds of the government issued for borrowed money, and there is not the slightest analogy between them and the orders here involved. It may well be doubted whether it is within the constitutional power of Congress to provide for the exemption from state taxation of orders similar to those here involved. However that may be, we are satisfied that Congress has not attempted to provide for such exemption. The statute relied on (Rev. Stats., sec. 3701—U. S. Comp. Stats. 1901, p. 2480) was enacted simply in furtherance of the principle enunciated in *McCulloch* v. *Maryland,* 4 Wheat. 316, and to indicate the determination of Congress that the usefulness of certain instruments as a means of carrying on the government would be enhanced by exemption from taxation. (See *Banks* v. *Supervisors,* 7 Wall. 26.) The words "and other obligations," read in connection with the context, "stocks, bonds, treasury notes," include only obligations of the government similar in character to those specifically named, and given under the general power to borrow money on the credit of the United States and to issue in return therefor obligations in any appropriate form (see Legal Tender

CXXXIX. Cal.—14

case, 110 U. S. 421, 444), and do not include checks given in payment of such obligations.

Learned counsel for plaintiff have not cited a single case in which it was held that the mere check of the government, payable on demand, is exempt from taxation, and we have not been able to find any case in which any such claim has been made. While the act of Congress of 1894 (2 Rev. Stats. Supp. p. 236—U. S. Comp. Stats. 1901, p. 2398), to subject to state taxation national bank notes and United States notes and certificates payable on demand, and intended to circulate as money, does not include orders like those here involved, it shows the determination of Congress that the exemption of promises of the United States of the kinds therein named was no longer necessary for the protection of any governmental power. It cannot be doubted that had Congress deemed that any question could arise as to the taxability of checks of the government payable on demand, it would have included them in the act modifying section 3701. But, as we have seen, such checks were never included in the provisions of said section, and were never exempt from taxation.

Not being exempt under the laws of the United States, they are not exempt under the provisions of our constitution (Const., art. XIII, sec. 1).

The judgment is affirmed.

Shaw, J., and Van Dyke, J., concurred.