[L. A. No. 1594. Department Two.—January 17, 1905.]

W. H. HOLMES, Appellant, v. N. A. MARSHALL, W. H.
JENKINS, and J. F. JENKINS, copartners as Marshall
& Jenkins, and ANNIE J. JENKINS, Respondents.

EXECUTION—EXEMPTION OF LIFE-INSURANCE MONEY DUE BENEFICIARY.—
The exemption from execution under subdivision 18 of section 690
of the Code of Civil Procedure, of "all moneys, benefits, privileges,
or immunities accruing or in any manner growing out of any life
insurance, if the annual premiums paid do not exceed five hundred
dollars," extends not only against the debts of the person whose
life was insured, and who paid the premiums, but also to the debts
of the beneficiary to whom it is payable after the death of the
insured.

ID.—ESTATE OF DECEASED PERSON—SETTING APART POLICY TO WIDOW
AS EXEMPT.—The proceeds of a policy payable to the administrators
of a deceased husband may be set apart to the widow as being prop-
erty exempt from execution, and such proceeds, when so set apart,
are exempt from her debts.

ID.—ATTACHMENT OF EXEMPT POLICIES—DEPOSIT IN BANK—POWER OF
COURT TO DISSOLVE ATTACHMENT.—The deposit in bank of the pro-
ceeds of life-insurance policies payable to the widow as beneficiary,
and of the policy set apart to her as exempt from execution, does
not remove the exemption; and the court has the power to dissolve
the levy of a writ of attachment upon such deposits, as being
exempt from execution, in an attachment suit upon a note signed
jointly by the husband and wife.

APPEAL from an order of the Superior Court of Los An-
geles County setting aside the levy of an attachment upon
exempt property. D. K. Trask, Judge.

The facts are stated in the opinion.

Powers & Holland, for Appellant.

Morton, Houser & Jones, for Respondents.

COOPER, C.—This action is upon a promissory note for one
thousand dollars, dated October 5, 1899, signed by J. F.
Jenkins and his wife, Annie J. Jenkins. J. F. Jenkins died
intestate, and respondent Annie J. Jenkins is his surviving
widow. After the action had been commenced a writ of attach–

ment was issued and levied upon $1,020.57 on deposit in the Citizens National Bank of Los Angeles to the credit of respondent Annie J. Jenkins.

The court made an order after notice—and, on motion of respondents, setting aside the levy of said writ and dissolving it as to the money so on deposit with said bank. This appeal is from the order so made. The principal question is as to whether or not the said money was subject to the debts of respondent Annie J. Jenkins, or exempt from execution against her. At the time of his death J. F. Jenkins was the owner and holder of three fully paid up life-insurance policies upon his own life, two of which (one for $99 and one for $1,385) were payable to respondent Annie J. Jenkins, and one of which (for $982.50) was payable to the estate of deceased, his administrators or executors. The estate of said deceased was duly probated, and the $982.50 insurance collected, which constituted the entire estate, and of which there remained $539.45 after paying costs and expenses of administration. This was set apart to the surviving widow, Annie J. Jenkins, as exempt from execution under section 1465 of the Code of Civil Procedure. The proceeds of all said policies were deposited by respondent Annie J. Jenkins in one account to her credit in said Citizens National Bank of Los Angeles. She drew against this account from time to time until the date of the levy of the attachment, when there remained the sum of $1,020.57 to her credit in said bank.

"All moneys, benefits, privileges, or immunities accruing or in any manner growing out of any life insurance, if the annual premiums paid do not exceed five hundred dollars," are exempt from execution. (Code Civ. Proc., sec. 690, subd. 18.)

The main contention of appellant is, that the exemption extends only against the debts of the person whose life was insured and who paid the premiums requisite to procure the insurance and keep it in force, and that such exemption does not continue after his death in favor of the beneficiary. In construing this statute, as in the construction of all statutes, it is the duty of the court to arrive at the intent of the legislature, if it can be done, from the language used in the statute. Statutes exempting property from execution are enacted on the ground of public policy for the benevolent purpose of

saving debtors and their families from want by reason of mis-
fortune or improvidence. The general rule now is to construe
such statutes liberally, so as to carry out the intention of the
legislature, and the humane purpose designed by the law-
makers. (12 Am. & Eng. Ency. of Law, 2d. ed., pp. 75-76,
and cases cited; *In re McManus,* 87 Cal. 294;[1] *Spence* v.
*Smith,* 121 Cal. 536.[2]) Bearing this rule in mind, let us see
what the legislature has said as to this matter. It has said
that where the annual premiums do not exceed five hundred
dollars, the insurance moneys shall be exempt from execution.
Here the annual premium did not exceed five hundred dollars.
It has said that *all moneys* accruing or in any manner growing
out of *any life insurance* shall be exempt from execution.
The money here accrued and grew out of life insurance upon
the life of deceased. After his death, no execution could
issue against him. The words "exempt from execution" were
clearly intended to apply to the moneys coming from the life
insurance to the hands of the benficiary. It is exempt from
execution as to all strangers or parties who have no claim to
it without any provision of statute. It was intended to ex-
empt it from the debts of the party to whom it was payable
and who procured title to it by the death of the insured. It was
not the intention that the insured might die leaving a small
insurance and a dependent family and that the insurance
money should be subject to execution for the debts of the
wife, even if she is the beneficiary named in the policy. The
words "exempt from execution" mean exempt from any exe-
cution. The legislature mentioned no class of executions, and
we are not at liberty to judicially insert a class. "Exempt
from execution" includes the defendant Annie J. Jenkins
and applies to plaintiff. We have no decision of this court
upon the question, and the decisions of other courts do not
furnish much assistance, because the statute under which
each decision was made is different from ours. In Kentucky
and Minnnesota the statutes declare in effect that certain in-
surance benefits, reliefs, etc., "shall be exempt from execu-
tion, and shall not be liable to be seized, taken, or appropri-
ated, by any legal or equitable process, to pay any debt or
liability of a member." In both these states the fund or

[1] 22 Am. St. Rep. 250, and note.    [2] 66 Am. St. Rep. 62.

relief is held to be exempt from execution, whether against the original member or against any benficiary who has been paid or is entitled to be paid any benefit falling within the class described in the statute. (*Schillinger* v. *Boes,* 85 Ky. 357; *Brown* v. *Balfour,* 46 Minn. 68; *First National Bank* v. *How,* 65 Minn. 187.) It seems, at least, doubtful as to whether or not these decisions properly construe the statutes of these states. The decisions in other states, particularly in New York, hold similar language to create an exemption only as to the member or insured.

In New York the language of the statute is, that such funds shall be exempt "from execution, and shall not be liable to be seized, taken or appropriated by any legal or equitable process to pay any debt or liability of such deceased member." (*Bolt* v. *Keyhoe,* 30 Hun, 619.) The Kentucky and Minnesota cases are criticised by Freeman in his work on Executions (3d ed., vol. 2, sec. 234b), but the author says in speaking of the language of the statutes in those states: "If these statutes stopped with the words 'exempt from execution' there would be no doubt of the exemption in favor of the beneficiary, but the additional words in the statute indicate that the legislature had in mind merely the debts or other liabilities of members of the association in question, and hence that, after the benefit was received by a person other than a member it would be subject to the usual laws relating to executions." In our code the statute stops with the words "exempt from execution." Under our statute necessary household and kitchen furniture is exempt from execution, and if the wife succeeds to such furniture it is equally exempt as to her debts. The farming utensils or implements of husbandry of the judgment-debtor are exempt, and if the son should take them under the will of his father, following his father's occupation, they would still be exempt as to the son's debts. Equally true as to the insurance money in controversy herein. If it had come to J. F. Jenkins in his lifetime, it is conceded that it would have been exempt as to his debts. It came to his wife as his beneficiary and is equally exempt as to her debts.

As to the policy payable to, and collected by the estate, the estate was the beneficiary, and the money was for the reasons before stated exempt from execution. It was therefore assets of the deceased exempt from execution, and was properly

set apart to the widow, as being so exempt. (Code Civ. Proc., sec. 1465; *Estate of Miller*, 121 Cal. 353.) The administrator or executor is not the owner of any part of the estate. He, in his official character, only holds it in trust for the parties entitled to it, subject to the purposes of administration. The title to the insurance money came to respondent Annie J. Jenkins through the estate and under the order setting it apart, and vested the title in her as effectively as if she had been named as the beneficiary of the policy. We can see no reason why the insurance money coming to her directly as beneficiary should be exempt from execution, and not that coming to her indirectly through the estate and the order setting it apart. In either case it is exempt from execution. In one case the instrument of life insurance gives her the title, in the other the law gives it to her. The statute provides that all property exempt from execution shall be set apart for the use of the surviving husband or wife. (Code Civ. Proc., sec. 1465.) If it is exempt from execution before being set apart, it does not cease to be so the moment it is set apart. The widow takes the family allowance by order of the court. After it is paid to her, it cannot be seized on execution for her prior debts, and diverted from the support of the family. The principle is fully discussed in regard to a homestead set apart for the family in *Keyes* v. *Cyrus*, 100 Cal. 322.[1] It was there held that the provision for setting apart exempt property including a homestead was for the protection and support of the family. The court said: "The authority given to the court in the first part of section 1465 to set apart for the family 'all the property exempt from execution, including the homestead selected' implies that the property when set apart is exempt from execution. . . . A homestead may be set apart to the widow, even though the estate be insolvent, and the property so set apart constitute the entire estate of deceased; but if the homestead thus set apart to her could be immediately taken in execution by one of her creditors it would fail to be available for her use or support, and it might happen that her creditor would fare better than a creditor of the decedent whose money had perhaps been used to purchase the very property so set apart."

In *Barnum* v. *Boughton*, 55 Conn. 117, it was held that

[1] 38 Am. St. Rep. 296.

money paid to the widow as an allowance for her support through the probate court could not be taken or attached by one of her creditors. The court said: "She could neither ask nor receive it for the payment of her debts; the probate court could not grant it for that purpose. . . . If one allowance can be intercepted so can every other; for if the door is opened for one creditor it cannot be closed against any; and the entire estate might thus be diverted from its legal destination. The law will not permit the instant necessities of the widow, and the ultimate rights of the creditors of the estate, to be postponed, in its name, to the demands of her creditors." So in this case the court will not allow the insurance money, which is exempt from execution as to the creditors of the estate, to be taken by the creditors of the widow. It is equally exempt as to them.

Appellant contends that by the deposit of the money in the bank, the money lost its identity, and that thereafter the bank owed Annie J. Jenkins the money. That the debtor thus voluntarily parted with the money, which was exempt, and acquired in lieu thereof a credit due by the bank. Such construction would seem to be unreasonable, and no authority is cited which supports it. It is true that in one sense by the deposit the relation of debtor and creditor was created as between the bank and Mrs. Jenkins, but she put the exempt money in the bank. She regarded it as money in the bank. She expected to and did draw it as she needed it. The bank did not give her the identical pieces of money that she deposited, but it gave her as she drew upon it money equal in value and kind. She was not required to keep the money buried or in her stocking in order to have it remain exempt. If the appellant's theory is correct she could not have paid a five-dollar grocery bill with a twenty-dollar piece, receiving fifteen dollars in change, without the risk of having the fifteen dollars attached. The law does not require such absurdity. The cases cited by appellant arose under the United States pension laws, and are not in point. The section of the revised statute construed provides: "No sum of money due or to become due to any pensioner, shall be liable to attachment," etc. The courts have correctly held that the section only protected the money while due or in course of transmission to the pensioner. Money due or to become due is designed to protect the amount

of the pension until it reaches the hands of the pensioner. It is then no longer money due or to become due. Our statute exempts the *money,* and although deposited in the bank it is still money and protected. It has not lost its identity because of the fact that the identical coins or bills deposited are not to be returned. Respondent probably never saw any coins or bills, but took the checks which the insurance company gave her, as evidence that it had the money for her, and deposited them with the bank, having the amounts credited in her bank-book as evidence that she had the money in the bank.

In *Hibernia Savings and Loan Society* v. *City and County of San Francisco,* 139 Cal. 205,[1] it was held that the checks or orders drawn upon the treasurer or assistant treasurer of the United States, payable on demand, are not merely obligations of the United States, but solvent credits subject to taxation. The court said: ''The orders were simply a convenient mode of payment of the obligation. They were, for all practical purposes, the money itself.'' So in the case at bar the credit in the bank is, for all practical purposes under the exemption laws, to be regarded as the money itself. Respondent had the right to have the levy set aside upon the exempt property. Section 556 of the Code of Civil Procedure provides that the writ may be discharged when the same was improperly or irregularly issued. This was not a dissolution of the writ of attachment, but an order setting aside the levy as to the exempt property. It would be strange if a court were so impotent that it could not set aside the erroneous levy of its own writ upon exempt property. Any other rule would compel the injured party to bring a suit for damages, which not only would lead to delay, but might in the end prove futile. Courts have power over their own process, and to set aside a levy of a writ of attachment or execution upon exempt property. (Freeman on Executions, sec. 271; Ency. of Plead. & Prac., p. 579, and cases cited; *Sandburg* v. *Papineau,* 81 Ill. 446.)

It follows that the order should be affirmed.

Gray, C., and Smith, C., concurred.

[1] 96 Am. St. Rep. 100.

For the reasons given in the foregoing opinion the order is affirmed.         McFarland, J., Henshaw, J., Lorigan, J.

Hearing in Bank denied.