[Civ. No. 29479. Second Dist., Div. Two. Mar. 6, 1967.]

Estate of FRED R. SILVERMAN, Deceased. DOROTHY K. SILVERMAN, Petitioner and Appellant, v. UNION BANK, as Executor, etc., Defendant and Respondent.

Falcone & Falcone and A. V. Falcone for Petitioner and Appellant.

Marvin A. Burnett for Defendant and Respondent.

ROTH, P. J.—Dorothy K. Silverman, widow of Fred R. Silverman, as permitted by Probate Code, section 680, filed for a family allowance and pursuant thereto, an order was made directing Union Bank, executor of the estate of Fred, to pay her a family allowance of $1,000 per month,[1] commenc-

---

[1]Mrs. Sliverman appealed the order, contending the amount of allowance was inadequate. On November 2, 1965, this court, in a nonpublished opinion, affirmed the order allowing her $1,000 per month.

ing as of August 18, 1963, and continuing to distribution, but in no event longer than 19 months.

On May 15, June 18 and July 17, all in 1964, separate attachments, ancillary to an action against Dorothy, filed in the Municipal Court of Beverly Hills, were levied, pursuant to Code of Civil Procedure, section 541,[2] *upon Union bank, Union Bank,* and *Union Bank Trust Department,* as a consequence of which Bank, as executor, withheld payment. On August 6, 1964, Dorothy filed a petition, citing the Bank for nonpayment of the family allowance and prayed that the executor be ordered forthwith to pay "all the family allowance due and payable to her under the said order to and including the hearing of this petition and . . . executor . . . show cause why it has not been paid . . . and why it should not be ordered to forthwith pay . . . in full; . . . ."

Dorothy argued in the trial court and urges here that:

1) A widow's allowance is exempt from any levy of attachment or execution;

2) A widow's allowance is in *custodia legis* and not attachable;

3) The writs of attachments were not levied upon the Bank in its capacity as the executor and therefore should have been ignored; and

4) The custom of Bank in making payments pursuant to the order creating the family allowance on the last day of the monthly period, instead of in advance monthly, commencing with the date fixed in the order, resulted in the return in one instance, of funds by Bank which it would not have had, had it paid in advance monthly.

The family allowance is for the widow's maintenance and support and for no other purpose. (*Estate of Blair,* 42 Cal.2d 728, 730 [269 P.2d 612]; *Estate of Treat,* 162 Cal. 250, 255 [121 P. 1003]; *Holmes v. Marshall,* 145 Cal. 777, 781 [79 P. 534, 104 Am.St.Rep. 86, 2 Ann.Cas. 88, 69 L.R.A. 67])

It is favored by law (Prob. Code, § 680; *Estate of Whitney,* 171 Cal. 750, 755 [154 P. 855].)

Whether a family allowance is exempt from attachment and execution, has not been decided in California.

---

[2]Contrary to appellant's contentions, section 561 of the Code of Civil Procedure has no application here. The section specifies procedure for attachment of interests of a defendant in the estate of a decedent. It applies only to attachment or garnishment of interests held "as heir, legatee or devisee." A widow's family allowance is not made to her on any of these bases; it is a statutory grant not grounded in rights of inheritance. (*Estate of Myers,* 115 Cal.App. 443, 445-446 [1 P.2d 1013].)

██ The right to a family allowance was nonexistent at common law and is "entirely statutory." (*Estate of Blair, supra; Estate of King,* 19 Cal.2d 354, 362 [121 P.2d 716].)

██ In providing for such allowance in section 680 of the Probate Code, the Legislature gave it a highly favored position in relation to other obligations of the estate, but did not exempt it from attachment or garnishment.

Section 690 of the Code of Civil Procedure, and the sections enumerated therein, specifically exempt certain property from execution or attachment: e.g., certain household furnishings (690.2); prosthetic and orthopedic appliances (690.5); health insurance benefits (690.20). The widow's family allowance is not one of the exempted properties.

Section 541 of the Code of Civil Procedure allows for the attachment of "all debts due . . . defendant, and all other property in this state of such defendant not exempt from execution. . . ." (*Dunsmoor* v. *Furstenfeldt,* 88 Cal. 522, 529 [26 P. 518, 22 Am.St.Rep. 331, 12 L.R.A. 508].)

Any kind of obligation of one man to another is a debt. The obligation might also be viewed as "property." Absent other considerations, therefore, a widow's allowance would be within the purview of section 541 of the Code of Civil Procedure. (*Dunsmoor* v. *Furstenfeldt,* 88 Cal. 522, 529, *supra.*)

In *Isbell-Kent-Oakes Dry Goods Co.* v. *Larimer County Bank & Trust Co.,* 75 Colo. 451 [226 P. 293], the Colorado Supreme Court considered a similar situation. Plaintiff attached the widow's allowance in the hands of the executor of the estate of her late husband, awarded by court order. Holding that such a fund may be garnished, the court stated: "It is claimed that the widow's allowance is exempt from garnishment by public policy. Code of 1921, §§129 and 157, provides that a plaintiff may garnish 'the credits, . . . debts, choses in action and other personal property of the defendant in the possession or under the control of any third person, as garnishee. . . .' Whatever the public policy may be, the express terms of the statute must control. Policy in such case is for the consideration of the Legislature, not the courts." (*Isbell-Kent-Oakes, supra,* at page 294.)

Illinois follows the same rule. In *Radeke Brewing Co.* v. *Granger,* 101 Ill.App. 599, 600-601, a creditor of a widow obtained a judgment against her. Reversing a judgment discharging garnishment against the executor of widow's allowance funds, the Illinois court reasoned: "Is a widow's

award subject to garnishment? The case of *Barnum* v. *Boughton*, 55 Conn. 117 [10 A. 514], is not in point. Under a statute there in force the Probate Court set apart a sum for the support of the widow pending the settlement of the estate, and had power to revoke the allowance if at any time the court ascertained it was not needed for the supply of her wants. That fund was held not subject to garnishment in the hands of the administrator for a judgment against the widow. There the widow did not own the fund. Our statute makes the widow's award 'her sole and exclusive property forever.' We have no statute making the property awarded to the widow, . . . specially exempt from execution or attachment or liability for her debts. We have no authority to extend the statute of exemptions by construction. It is true it is the primary object of the award to furnish her the means for the support of herself and family for a time. Suppose she has obtained this support on credit. Why should not the property awarded to her pay the debt, subject to the exemptions the law allows? . . . We think we are not authorized to declare such property or money exempt, except as she may be able to establish the same exemptions to which the statute entitles any execution debtor under like circumstances.''

We feel the Colorado and Illinois cases are well reasoned. As pointed out in *Radeke*, despite the fact that family allowances are for the sole benefit of the widow and for her maintenance, and that they are favored in the law, it is not difficult to assume a situation in which a widow receiving a family allowance, incurs bills for current necessaries of life and does not pay them. If no part of the family allowance could be attached for such bills, the family allowance would achieve a status of immunity which is not afforded to a working man's family that lives from hand to mouth, even though there is specific provision for such exemption. (Code Civ. Proc., §690.11.)

Appellant relies upon *Holmes, supra,* and excerpts language from that case which is clearly *dicta* as applied to the facts at bench. In *Holmes,* the court said, among other things, at page 781:

''The widow takes the family allowance by order of the court. After it is paid to her, it cannot be seized on execution for her prior debts, and diverted from the support of the family.'' The *Holmes* case, however, involved a situation with respect to insurance proceeds which were specifically exempt if the premium involved did not exceed $500 per annum.

(§ 690, subd. 18, as it existed at the time *Holmes* was decided.)

Appellant urges in addition that the family allowance is *in custodia legis* and is therefore not subject to attachment or execution.

It is true that where the obligation is in the custody of the court, it may not be treated as a debt or property subject to attachment without permission of the court exercising custody. "An exception to this rule is recognized where a specified sum has been set aside for payment to the attachment debtor and nothing remains to be done regarding the court's custody except to pay over such specified amount to said debtor." (*Lea* v. *Strebe*, 201 Cal.App.2d 227, 230 [20 Cal.Rptr. 20]. See also *Estate of Nerac*, 35 Cal. 392, 397 [95 Am.Dec. 111].)

In *Dunsmoor, supra,* money was assigned while in the hands of a clerk of the superior court. Normally such funds would be *"in custodia legis."* It was held that the obligation was one subject to assignment or attachment and *Dunsmoor* specifically declares at pp. 527-528 that funds in the hands of an executor which have been ordered distributed, are subject to attachment by creditors of the distributee. The Colorado and Illinois cases heretofore analyzed do, of course, specifically support this position.

Appellant contends too that the levies upon Union Bank in the various names that are set forth at the outset, are not valid levies upon Union Bank, executor of the estate of Silverman. No cases, however, are cited by appellant to support this position. In our opinion, Union Bank is one corporate entity engaged in the banking, trust and other activities. When it is served with a writ directed to it in its corporate capacity, it properly responds when it sets forth information, money or things of value which it holds in any of the capacities in which it acts as a corporation.

In respect of the various writs the trial court found that: the writ of attachment levied on May 15, 1964, was legally ineffective, there having been no monies due Dorothy Silverman at the time; that the writ of attachment levied June 18, 1964, was legally effective, there having been $2,000 due Dorothy Silverman at that time; that the writ of attachment levied July 17, 1964, was legally ineffective, there having been no further monies due Dorothy Silverman at that time; and specifically refused to make a determination as to a levy

of September 18, 1964, shown by the clerk's transcript, but not in issue, during the course of the trial.

Since the trial court ruled that the family allowance was payable in advance and respondent does not quarrel with said ruling, it may be that only $1,000 was actually due to Dorothy on June 18, 1964. However, Bank, because of its custom in withholding payments until the end of the month, did hold an additional $1,000, which under the ruling which is accepted, had become due to Dorothy on May 18, 1964. Bank, on that date, had a total of $2,000 due to Dorothy. Its return to the writ was therefore proper.

The failure of the trial court to make any finding as to the writ levied on September 18, 1964, was proper, not only because evidence was not before it at the hearing, although there was correspondence submitted informally by the parties, but because the trial judge properly held ''[t]hat . . . all . . . issues in relation to the validity . . . of the . . . attachments can, should be and are legally determinable in and only in appropriate proceedings in the Municipal Court. . . .'' We agree.

At issue, too, was the right of one of Bank's officers (Bank being a party to the citation), to collect witness fees and mileage. This issue was decided in appellant's favor, and there is no contention before us that the decision is not proper.

The judgment is affirmed.

Herndon, J., and Fleming, J., concurred.

A petition for a rehearing was denied April 5, 1967, and appellant's petition for a hearing by the Supreme Court was denied May 4, 1967.