EGERTON *v.* THE THIRD MUNICIPALITY OF NEW ORLEANS.

Taxes due to a municipal corporation cannot be seized under execution by a creditor of the
corporation. Such a right would involve the power to destroy the corporation itself, and be
repugnant to the letter and spirit of the constitution, authorizing the creation of such cor-
porations for the preservation of public order.

Where positive enactments of the Civil Code are at variance with the definitions which it
contains, the latter must be considered as modified by the clear intent of the former.

Article 637 of the Code of Practice, which authorizes the seizure under execution of " all
sums of money which may be due to the debtor in whatsoever right," must be understood
as referring exclusively to that class of rights defined and protected by the constitution as
*the rights of property.* Taxes imposed for the protection of those rights, form no part
of them.

APPEAL from the Third District Court of New Orleans, *Kennedy,* J.
*Mott,* for the appellant. A municipal corporation is a *private* corpora-
tion. Civil Code, arts. 421, 422. Judgment against a State may be executed
by seizing taxes due to it. Const. U. S. art. 3, sec. 2. *Bank of U. S.* v. *Hal-
stead,* 1 Wheaton, 50, 51, 66. The right to seize the taxes cannot defeat the
object contemplated by the constitution in creating the corporation; the seizure
of taxes cannot destroy the corporation—it can only create a necessity for addi-
tional taxation. Whenever a judgment orders the payment of a sum of money,
the property, real and personal, and rights and credits of the debtor may be
seized and sold to satisfy the same (Code of Pract. arts. 641, 642); and a third
person may be cited to answer under oath what sum he owes the defendant, and
be compelled to pay over the amount in satisfaction of the execution. Statute
20th March, 1839.

*Barthe, Buisson* and *Carter,* on the same side.

*Grailhe,* for the defendants. The Third Municipality of New Orleans is a
*political* corporation. Civil Code, art. 420. The taxes imposed by the Muni-
cipality are public imposts. The essential characteristics of a public impost
are : 1st. Its being imposed by public authority. 2d. Its having for its exclu-
sive object, the security and protection of the property and social rights of the
community. *" Les revenus de l'état sont une portion que chaque citoyen donne
de son bien pour avoir la sureté de l'autre, ou pour en jouir agréablement.*
Montesquieu, Espr. des Lois, b. 13, ch. 1. The municipal taxes cannot be
seized under execution—they are inviolable. The product of such taxes is not
susceptible of private ownership, having been consecrated in advance to public
uses. The legislature, in creating the Municipality, intended to secure to it the
essential conditions of its existence. The power of taxation is the most essen-
tial of these conditions. The product of the taxes is the principle of life, indis-
pensable to the existence of the municipal administration. The sovereign alone
has authority to dissolve a political corporation. The revenues of the three
Municipalities of New Orleans, are the pledge of the creditors of the former
city corporation, and cannot, for this reason, be seized. Statute of 1836.
Articles 642, 647 of the Code of Practice authorize only the seizure of civil
rights—not rights of sovereignty. The provision of art. 647 authorizing the
seizure of " all sums of money which may be due to the debtor, in whatsoever
right," must be understood as confined to sums due in virtue of a civil contract,
or in consequence of some fact giving rise to a civil obligation. The tax-payer

EGERTON
v.
THIRD MUNICI-
PALITY OF NEW
ORLEANS.

is not the debtor of the Municipality, for he receives an equivalent for the tax in the protection &c. afforded to him by the municipal government; nor is the Municipality a creditor, since it receives the amount only to expend for the public benefit, and not to appropriate for its own use. The municipal authorities are but administrators of the public funds. The relation existing between the corporation and the tax-payer not being that of creditor and debtor, the sum representing the tax is not one subjected to seizure by art. 647 of the Code of Practice ; nor does the 13th sect. of the act of 1839 authorize its seizure. See the case of *Claiborne* v. *Police Jury*, 7 Martin, 4.

The judgment of the court was pronounced by

ROST. J. The plaintiff, who is a judgment creditor of Municipality No. 3, availing himself of the provisions of the act of 1839, made many of the tax-payers of the Municipality garnishees under his execution, and propounded interrogatories to them to ascertain the extent of their indebtedness for city taxes. The defendants obtained an injunction, on the ground that taxes are not liable to seizure under execution. The plaintiff joined issue on that allegation, and judgment having been rendered against him in the court below, he appealed.

We concur with the plaintiff's counsel that, the issue in this case is exclusively a question of law. We dismiss, therefore, from our consideration all questions of expediency, which it may be supposed to present.

In the case of *M'Culloch* v. *The State of Maryland*, Judge Marshall, said : " A constitution, to contain an accurate detail of all the subdivisions of which its great powers will admit, and of all the means by which they may be carried into execution, would partake of the prolixity of a legal Code, and could scarcely be embraced by the human mind. It would probably never be understood by the public. Its nature, therefore, requires that, only its great outlines should be marked, its important objects designated, and the minor ingredients which compose those objects be deduced from the nature of the objects themselves." From the peculiar relation of the government of the United States towards the State government, much diversity of opinion may exist with regard to the application of those principles in the construction of the constitution of the United States ; but there can be no difference of opinion on the subject in question, involving the consideration of the constitution and government of a State, where no question is involved of positive or implied constitutional inhibition. The light thrown upon the theory of government by the opinion of the court in that case, will guide us in this inquiry.

Constitutions are but the frame of social organization; they define the objects of government, and establish the great powers which the people intend to be permanent; but the establishment of the subordinate powers, which it is expedient to alter, modify or change, according to the varying necessities of each epoch, as well as the best means of carrying into effect, at different times, many of the permanent powers established, are left to the wisdom and discretion of the legislative department. The institution which provides for the police of neighborhoods, for facilities of transportation and of travel, and for the local government of towns, are instances of the exercise of one class of those subsidiary powers by the legislature. The paternal power, the marital power, the power of the master over the apprentice or the slave, may be viewed as instances of another class. These institutions and many others are essential to the preservation of the rights of life, liberty and property, for which constitutions purport to be established ; and the legislative enactments by which they are created

and brought into action, constitute a part of those laws for the preservation of public order, from the force and obligation of which individuals cannot derogate by their conventions. Civil Code, art. 11. The institution of town corporations for government purposes, is as ancient as civilization itself. " De quelque manière qu'un état ait eu son origine et qu'on ait commencé de bâtir des villes," says Domat, " ceux qui s'y sont assemblés n'ont pu le faire, qu'en s'unissant par une police réglât toutes les commodités publiques." Domat, L. C. p. 106.

But it is a remarkable fact, and one that belongs to the cause, that the people of Louisiana, in convention assembled, have twice considered the local government of this great metropolis as too important to be placed among those subordinate institutions, and have recognized the city of New Orleans, in its corporate capacity, as entitled to peculiar political powers and privileges. The right of the citizens of the city of New Orleans to appoint the several public officers necessary for the administration of the police of the said city, pursuant to the mode of election which shall he prescribed by the legislature, and the right of the officers thus appointed to be commissioned as justices of the peace, and to exercise such criminal jurisdiction for the punishment of minor crimes and offences as the legislature may vest in them, are secured and rendered permanent by art. 128 of the State constitution. Those political franchises stand upon the same ground as any other constitutional power, and the city of New Orleans and its officers are, for purposes of police and good order and for the punishment of minor crimes and offences, permanent functionaries of government.

The counsel for the plaintiff derides the idea that the defendants are invested with sovereign powers. Names cannot alter things. Under our form of polity, no department of the government exercises the powers of sovereignty in its own right. The constitutional powers of the State are all trusts. The powers of the legislature, of this court, and of the city of New Orleans, differ in degree and object, but they all derive their binding force from the supreme law of the State. The only difference in relation to them is, that the legislature cannot change or modify the organization of the Supreme Court, or its own, and that it may change or modify the charter of the city, the provision in the constitution going no farther than to recognize as permanent: 1st. Its corporate organization : 2d. The right of the citizens thereof to elect the officers of the corporation : 3d. The right of those officers to be commissioned as justices of the peace, and to exercise the criminal jurisdiction already adverted to. It has been argued that the defendants are not a civil or political corporation, under the definition given by the Civil Code. We have already shown that the constitution vests them with that character. The definition relied on from the English side of one of the articles of the Code, proves nothing but the ignorance of the person who translated it from the French. Definitions are, at best, unsafe guides in the administration of justice ; and their frequent recurrence in the Louisiana Code, is the greatest defect in that body of laws. In the case of *Ellis* v. *Prevost and others*, 13 La. 230, the former Supreme Court said that, the statutory provisions of the Code were often at variance with the definitions it contains, and that, in those cases, it was a sound rule of interpretation to consider the definitions as limited or modified by the clear intent of the positive enactments. This case shows the necessity of the rule.

The city of New Orleans is a public corporation, clothed by the constitution with many important powers of government ; and, as the revenue is the essential engine by which the means of answering its exigencies must be procured,

the power of procuring that article in its full extent must necessarily be comprehended in that of providing for those exigencies. " Money is with propriety considered as the vital principle of the body politic ; as that which sustains its life and motion, and enables it to perform its most essential functions. A complete power, therefore, to procure a regular and adequate supply of revenue, as far as the resources of the community will permit, may be regarded as an indispensable ingredient in every constitution." Federalist, p. 112, 117, ed. 1845.

Under this view of the subject, the legislature, carrying out the intention of the framers of the constitution, has enabled the defendants to procure a permanent and regular supply of money by taxation. This power to tax must therefore be considered as if derived from the constitution.

The counsel for the plaintiff argues that this is immaterial; that the State itself may be sued in the United States courts, and, if condemned, is liable to execution ; that the marshal, in executing the judgment, has a right to seize in the hands of individuals, the amounts due by them for State taxes. We were not prepared to hear such an argument seriously urged at this bar. If the facts upon which it rests were true, it would be a sufficient answer that, the finances of a State form no part of its public domain. Taxes and national subsidies of all kinds do not originate in the right of property; they are all essentially attached to sovereignty, and cannot be be separated from public power; they form part of the eminent domain of the sovereign. 3 Toullier, p. 17.

" L'empire, qui est le partage du souverain, ne renferme aucune idée de domaine proprement dit. Il consiste uniquement dans la puissance de gouverner. Il ne donne à l'Etat sur les biens des citoyens que le droit de régler l'usage de ces biens, le pouvoir de disposer de ces biens pour des objets d'utilité publique, la faculté de lever des impôts sur les mêmes biens. Ces différents droits réunis forment ce que Grotius, Puffendorf, et autres appellent *le domaine éminent du souverain*, mots dont le vrai sens, développé par ces auteurs, ne suppose aucun droit de propriété, et n'est relatif qu'à des prérogatives inséparables de la puissance publique. Nous convenons que l'Etat ne pourrait subsister s'il n'avait les moyens de pourvoir aux frais de son gouvernement; mais, en se procurant ces moyens par la levée des subsides, le souverain *n'exerce point un droit de propriété* ; il n'exerce qu'un simple pouvoir d'administration." Portalis, Exposé des Motifs, in Locré, vol. 8, p. 153, 155.

The taxes of the State are inherent to its sovereignty, and never can be seized.

Another counsel has argued that, admitting that the State taxes are not liable to seizure, it is otherwise with respect to those imposed by the Municipalities of this city ; but the reasons alleged in support of the distinction, have failed to convince us. There is no difference in the nature of the two taxes. " Public order and the common good of a State require two kinds of expenses : the first is that which concerns the whole State, and the second, the expenses necessary for the police and good government of cities. It is for these two kinds of expenses, that there are two kinds of *public contributions*. The first is imposed and collected by the sovereign and his officers ; the second, by the officers of town corporations." Domat, 2 pt. tit. 5, sect. 1, no. 5. Domat makes no distinction between the two, and as the taxing power of the Municipalities is derived from as high an authority as that of the corporations of which he speaks, no distinction can be made here.

It must be conceded that the right of the Municipalities to impose and collect

taxes, is not derived from any right of ownership in the property taxed. If
their title to the taxes does not originate in private right, it must necessarily be
deduced from *public power* ; and, being so deduced, the taxes are a constituent
part and a necessary ingredient of that power, no more liable to seizure than
the whole power itself would be. Article 647 of the Code of Practice, in au-
thorizing the seizure of sums of money due the judgment debtor, *in whatsoever
right*, must be understood as having exclusive reference to that class of rights,
defined and protected by the constitution as rights of property. *The taxes im-
posed for the protection of those rights*, form no part of them. Any other inter-
pretation of that article would be destructive of public order, and inconsistent
with the very idea of government. The principle, that under the American
constitutions, no power or individual possesses directly or indirectly such an
overruling influence over other powers, as would enable it or him to stop their
functions, and thus to disorganize the government, is an axiom—a self-evident
proposition. Federalist, p. 199.

In the case of *M'Culloch* v. *The State of Maryland*, already cited, the court
held that, the power to tax involves the power to destroy; that the power to
destroy may defeat and render useless the power to create; and that there
would be a plain repugnance in conferring on one government a power to con-
trol the constitutional measures of another. We have nothing to do with the
question, whether the establishment of a bank was a constitutional measure ;
but, taking the facts as stated by the court, their argument is unanswerable ; and,
by parity of reasoning, it is equally true that the power to seize the tax in this
case, involves the power to destroy the corporation ; that the power to destroy
the corporation, may defeat and render useless the power to establish it; and
that there would have been a plain repugnance in conferring on any individual
the right to arrest, or impede, the action of a constitutional power, in the func-
tion of government.

The power to create the corporation of the city of New Orleans, for purpo-
ses of local government, involves the power to preserve and protect it ; but that
protection would be unavailing if it could be deprived of the regular supply of
means, without which it cannot work its task. For all useful and practical pur-
poses, the exercise of the right claimed would, in the present embarrassed con-
dition of the Municipalities, as effectually abrogate their charters, as if they
had been repealed by law. We conceive such a state of things to be repugnant
to the letter and spirit of the constitution.

It is urged that the defendants cannot avail themselves of the privileges of
public power, because they may be sued, and that sueing them would be doing
a vain thing, if, in default of any other property, their taxes cannot be seized
under the judgment obtained against them. We all know that judges and gov-
ernors may also be sued notwithstanding the political powers they exercise, and,
although their salaries may be their only means of paying their debts, those
salaries are not liable to seizure. It is true that out of superabundant caution our
Codes make special provision in relation to salaries of office, but the same rule
prevailed before upon general principles.

The taxes in this case were seized in the hands of the corporators, after
their assessment and before their collection. The attributes of the taxing pow-
er, as may be seen in every English statute on the subject of taxation, are, the
imposing, levying, collecting, receiving and taking of the tax; the *collecting* and
*receiving* are as much part of that power, as the *levying* and *imposing*. The

EGERTON
*v.*
THIRD MUNICI-
PALITY OF NEW
ORLEANS.

EGERTON
*v.*
THIRD MUNICI-
PALITY OF NEW
ORLEANS.

power would be precarious otherwise; and, as the plaintiff admits that he had no power to impose and levy the tax, it necessarily follows that he could not lawfully *collect* and *receive it*; so that, if even the tax was liable to seizure, it could only be seized in the coffers of the treasurer after its collection; but, to put an end to litigation on this important subject, we have thought it best to give our opinion on the whole issue submitted to us, and to state at large the reasons on which it is founded.

It is contended that, if the Municipalities cannot pay their just debts they ought to be broken up, and their powers entrusted to safer hands. Whether it be an ascertained fact that, those corporations, as at present organized, cannot be safely trusted with power or with money, is a question we are not competent to determine. But it is very evident that the convention assembled last year thought otherwise. The acts of the Municipalities and their indebtedness were known to them, and, with that knowledge, the convention made no change in their organization, and gave their officers additional political powers. There is no warrant of law to justify the seizure in this case, and, as none existed at the time the debt sued on was contracted, the credit given to the defendants could not have rested upon the belief that their taxes were liable in execution.

It is not without much reflection that we have been able to concur in the decree about to be rendered in this case. On the first view of this question there is something very repugnant to the moral sense, in the idea that a municipal corporation should contract debts, and that, having no resources but the taxes which are due to it, these should not be subjected by legal process to the satisfaction of its creditors. This consideration, deduced from the principles of moral duty, has only given way to the more enlarged contemplation of the great and paramount interests of public order and the principles of government. Although the enforcement of payment may now be beyond the power of the judiciary, the subject will, no doubt, be deemed worthy of occupying the wisdom and sense of justice of the legislature.                    *Judgment affirmed.*