# Murphree v. City of Mobile *et al.*

108  663
123  373
124  632

### *Garnishment of City Funds.*

1. *Objections; waiver of.*—Objections however meritorious are, generally speaking, regarded as waived unless made in the trial court; such objections will not be considered when raised, for the first time, on appeal.

2. *Municipal funds; garnishment; execution.*—Municipal funds realized for municipal purposes and necessities are not subject to garnishment at instance of a municipal creditor, but funds arising otherwise, as for instance, from sale of property of the city, held by it as private property, and not for governmental uses, are subject to garnishment, as the property itself would have been subject to an execution against the city.

APPEAL from Mobile Circuit Court.

Tried before Hon. JAMES T. JONES.

Mary J.Murphree recovered a judgment against the city of Mobile and garnishments were issued thereon. The garnishees put in answers, and the plaintiff moved for a judgment against each of them on their answer. The motion was denied and the garnishees discharged.

G. L. & H. T. SMITH and THOS. H. SMITH, for appellant.—There are three barriers to the jurisdiction of the court to grant a motion of judgment debtor to discharge the garnishees pending contest of answer.

1.   The judgment debtor was not a party to the suit. *Cross v. Spillman & Scott*, 93 Alabama, 172; 1st Brick. Dig., p. 173, § 276. Nor could the city make itself a party.—*Cross v. Spillman & Scott, supra*; *Flournoy v. Harper*, 81 Ala. 499; *Renfro Bros. v. Goetter, Weil & Co.*, 78 Ala. 313.

2.   It was clearly the right of plaintiff to contest the answer of the garnishees and show that other money besides that admitted by the answers, is in their hands subject to garnishment; otherwise the garnishee by a false answer could always defeat plaintiff's demand.—Code 1886, § 2981.

3.   Because the discharge by the court of the gar-

[Murphree v. City of Mobile *et al.*]

nishee, on motion of the debtor, pending contest of answer, deprived plaintiff of the right to try the contest before a jury.—Code 1886, § 2981. It is settled law that while property owned and used by a municipal corporation for public purposes is not subject to execution, yet any property held by the city as private property and not used and useful for municipal purposes is subject to execution.—*Mayor, &c. v. Rumsey & Co.*, 63 Ala. 352; *Hart v City of New Orleans*, 12 Fed. Rep. 295. See also, *Thompson v. Moore*, 44 Mich. 602; *Denton v. Jackson*, 2 Johnson Ch. 320; *Hampstead v. Hampstead*, 2 Wend. 131; *Riley v. Rochester*, 9 N. Y. (5 Seld.) 64; *Girard v. New Orleans*, 2 La. 897; *Chambers v. St. Louis*, 29 Mo. 543; *Bullock v. Curry*, 2 Metc. (Ky.) 171; *Concord v. Bascowen*, 17 N. H. 465; *Houston v. Huron Mining Co.*, 57 Mich. 547; 15 A. & E. Encyp. of Law, page 1060.

P. J. HAMILTON, City Attorney, for appellee.—The garnishments were discharged because the funds were public revenues. The proceeds of sale in hands of Leinkauf & Sons must have been of lands which were bought with municipal revenues, as there is no evidence the city had any private funds, and, if so, the proceeds would simply become tax money again, and be exempt.—*Sherman v. Williams*, 19 S. W. Rep. 606. If liable at all, the money was only subject to garnishment before it became mingled with indisputably public funds.—*Maury v. Mason*, 8 Porter 211. Presumptively all funds and property of the city are exempt, as they are presumed to be public and governmental.—*Curry v. Savannah*, 37 Am. Rep. 74; Dillon Mun. Corp., §§ 64, 100. A treasurer, or what takes the place of a treasurer, can not be garnished by a creditor of the corporation, because in effect it is a garnishment on the debtor corporation itself. The corporation can not sue him or other depository except in case of a default. Therefore they can not be sued as garnishees.—*Neuer v. O'Fallon*, 18 Mo. 277; *Underhill v. Calhoun*, 63 Ala. 216; Am. Dig. 1893, p. 2270, § 6. A deposit in a bank is the same as keeping the money in the treasury.—*Peterkin v. N. O.*, 2 Woods, 100.

HEAD, J.—The appellant (plaintiff below) having

recovered a judgment in the Mobile Circuit Court, against the city of Mobile, a municipal corporation, for the sum of $5,000, sued out garnishments thereon against the First National Bank of Mobile, the Alabama National Bank of Mobile, the Peoples Savings Bank, W. H. Leinkauff & Son, Bankers, and F. E. Tutwiler & Co. (and another bank who was discharged, on answer, by consent) as supposed debtors of the city. The said banks and bankers, whose place of business was Mobile, severally answered, showing large deposit balances, with them, in favor of the city, but setting up, at large, the claim of the city to exemption of the funds from attachment, on the ground that they constituted the public revenues of the city for governmental purposes. On the 24th day of January, 1893, the plaintiff regularly made and filed affidavits, under the statute, for the purpose of contesting the truth of these answers; but on the same day, she also filed motions, severally, for judgments on the several answers. Before that day, to-wit, on the 9th day of the same month, the city of Mobile, upon whom notice of the proceedings had been served, intervened, by counsel, and filed a motion to discharge the garnishees, on the ground that the funds were public revenues for governmental purposes, and, therefore, not subject to attachment. On the 25th day of the same month, the plaintiff, the city of Mobile and the garnishees appeared, by counsel, and agreed that plaintiff's motions for judgments on the answers, and the city's motion to discharge the garnishees, should be argued by the attorneys of the several parties, and submitted to, and be determined by the court, at the same time; which was then done. On the hearing, both the plaintiff and the city introduced evidence, without objection by either to the pursuit of that course. The court adjudged in favor of the city; and denied the motions for judgments on the answers, and discharged the garnishees. From that judgment the appeal is prosecuted.

The plaintiff's counsel, in argument, now object, for the first time, that the City of Mobile, being the defendant in the judgment sought to be collected, was no proper party to the garnishment proceedings, and, therefore, had no standing in court to make its motion; and further, that the court was not authorized to discharge the garnishees, whilst there were, upon the file, affida-

vits, made by the plaintiff, as the bases for contestations of the answers, until the contemplated issues were made up and tried. These objections, howsoever meritorious, if seasonably interposed, were unequivocally waived. The court had jurisdiction of the subject matter of both motions, and the movants submitted their persons to its jurisdiction. No objection was made on the score of parties. Also, by common consent, there was, in fact, a contest of the truth of the answers tried, on the hearing of the motions.

It is not now disputed that all the funds sought to be condemned by the several garnishments, were public revenues such as were not subject to garnishment, unless a particular sum of money, the proceeds of the sale by the city of a certain piece of land, which was deposited with the garnishees, W. H. Leinkauf & Son, forms an exception. This, we extract from the mass of matter contained in the voluminous transcript, as the single real issue, whether or no, that certain sum was of a nature, and so held, as subjected it to the process; which issue was determinable upon the following brief statement of practically undisputed evidence : Some time before the war, the then city of Mobile acquired a strip of land, located a few miles from, and outside of, the corporate limits, fronting say, a hundred feet on the Mobile river and extending westwardly, in varying widths, less than its front, about one half mile. It contains about six acres. The Louisville & Nashville Railroad was constructed across this strip, cutting off on the east side next to the river, about one acre. There was erected, before the war, on the western end of the strip, a substantial brick house, about forty by fifty feet, in dimensions, to be used as a magazine for the storage of gunpowder. A public road to the city ran near that end, which was connected with the magazine by a private road. The only use shown to have been made by the city, of the magazine or land, appears from the testimony of the city clerk and city engineer. The clerk testifies that the building was, at one time, used by the city, as a powder magazine ; that he was the keeper of said powder magazine at the time, just after the war ; that he did not know, of his own knowledge. whether the city had used the building since that time or not, but that he had, a few years since, seen some powder stored in the build-

ing, but did not know to whom the powder belonged, nor who was having it stored, nor by whose consent it was being done; that about three years before the trial he passed the tract of land, on the train, and saw some quarantine officers stationed on the west side of the railroad track. The engineer testifies that he has held his office for a number of years, and is familiar with the land in question, which was purchased by the city many years ago; that about three years before the trial the city used that portion of the strip west of the railroad as a station for quarantine officers; that the acre east of the railroad could not be used as a station for the quarantine officers because it was not fit for this purpose, and that it was never used so far as the witness knew. The following ordinance of the city was introduced: "That the house and premises now occupied for the storage, located at or near the mouth of Chickasabogue, is established as the 'powder magazine for the city of Mobile.'" The date of this ordinance is not given, but it was evidently passed just after the war, when it is shown that the city used the building for the storage of powder. The other ordinance introduced sheds no light on the controversy.

Without entering upon a discussion of this testimony, we think it is clear, and so hold, that the one acre fronting on the river, cut off from the rest, by the railroad, was not held by the city for any governmental uses, and was no more than as private property held by an individual. It was subject to levy and sale under execution against the city. *Mayor &c.* v. *Rumsey & Co.,* 63 Ala. 352.

In August 1892, about two weeks after the garnishment was served on Leinkauf & Son, the city sold this acre for $1,000, and received the check of the purchaser for that sum. That check was deposited, August 15th, with Leinkauf & Son, who passed the same to the credit of the general council of the city. Four hundred dollars of the sum was, by agreement, paid to plaintiff's attorneys and credited on her judgment. The balance of six hundred dollars was subject to plaintiff's garnishment, unless the relation of the city and garnishees was such as to forbid, on grounds of public policy, all remedy of that character against the garnishee.

It is contended for the city, that under its charter, the

bank (garnishees) constitutes, in legal effect, the city's treasurer, and, as such, is not liable to garnishment, without regard to the nature of the funds deposited with it. This contention arises upon the provisions of section 41 of the amended charter (Acts 1886-7, p. 247) which are : "That all money collected for taxes, licenses, fines, penalties and forfeitures under this act, shall be paid as collected to the credit of said general council, into such bank or banks as may be designated by it as depositories, and shall be drawn out only in such sums and at such times as the same shall be actually required and only for the expenditures authorized by law, and only upon warrants signed by the mayor and countersigned by the city clerk, and issued in payment of claims that may have been audited and ordered to payment by said general council. All said warrants shall be issued from a bound book" etc., describing how the book shall be kept and what it shall show. The issuance of a warrant, without complying with the act, is a misdemeanor. The charter provides that the city clerk shall, among specified duties, also perform such other duties as may be required of him by said general council. He testifies that he is the custodian of the revenue and money of the city.

It does not appear that the general council had ever designated the garnishee as a depository, unless the fact that a large amount of the city's revenues were, from time to time, beginning in January 1892, deposited with it, is evidence of such designation. But, however, that may be, we see from the language of section 41, above quoted, that the authority to deposit in a bank is confined to money collected for taxes, licenses, fines, penalties and forfeitures. The clerk had no authority so to deposit the proceeds of the land in question, and the bank was not a depository, under the charter, of that fund. It, the bank, was liable to the suit of the city therefor, at any time : and being so, the fund was liable to be reached by the plaintiff's garnishment. The circuit court should, therefore, have rendered judgment in favor of the plaintiff against the said Wm. H. Leinkauf & Son, for the sum of six hundred dollars, and interest thereon from August 15th 1892; and as to them the judgment of that court is reversed and a judgment here rendered against them, as above indicated. Affirmed as

to the other garnishees. Inasmuch as the appellant has, unnecessarily, incumbered the record to the extent of at least three-fourths of the transcript, we will tax her with three-fourths of the cost of the transcript, which may be paid by the garnishees, or the sheriff or other officer into whose hands the money recovered by the plaintiff may come, out of the said money so recovered by her. She will be taxed also with the costs of the court below incurred in the proceedings against the other garnishees.

Reversed and rendered.