CITY OF CORAL GABLES, a Municipal Corporation, *Plaintiff in Error*, vs. ELLEN HEPKINS, a feme sole, *Defendant in Error*.

144 So. 385.

Division B.

Order entered August 30, 1932.

Opinion filed September 16, 1932.

On petition for rehearing opinion filed November 22, 1932.

*Edward L. Semple,* for Plaintiff in Error;

*Mitchell D. Price* and *Charles W. Zaring,* and *Robert S. Florence,* for Defendant in Error.

DAVIS, J.—The principal question necessary to be determined on this writ of error is: Where the charter of a municipality expressly authorizes the acquisition and maintenance of a golf course, and the municipal power conferred by the charter is exercised by the municipality, and a golf course, including a country club, are purchased with proceeds of a bond issue, authorized and sold by the municipality, the proceeds of which have been expended to pay the purchase price of such golf course and country club, does the property comprising the country club become property subject to execution for the debts of the municipality, when subsequently after its acquisition, the country club proves not profitable and a source of expense to the city, by reason of which fact the city leases the same temporarily to individuals to operate for their own private gain, for a certain consideration, the city reserving the right to resume operation in the future, and to make other and further leases of it, should circumstances render it advisable to do so.

In this case the Circuit Judge found from the evidence before him that certain real estate owned by the City of Coral Gables comprising the Coral Gables Country Club had been levied upon by the Sheriff of Dade County under an execution issued on a judgment for $13,313.67 rendered against the city in favor of defendant in error, Ellen Hepkins. The property levied upon consisted of a lot and building known as Coral Gables Country Club, which for several years past had been, and was then, under lease for hire to certain tenants of the municipality who operated same as a club, maintaining therein a dance floor and restaurant, charging an admission fee to the general public. This real estate was shown to have been purchased by the municipality with part of the proceeds of a bond issue, to be held and used by the city

for municipal purposes under its charter. While so held and used by the city under charter authority in the first instance, for municipal purposes, said property as held and used at the time of the levy of the execution upon it, was specifically found by the Court not to be property essential to the existence of the City of Coral Gables, or necessary and useful to the exercise of its governmental powers, or the performance of its governmental duties, and therefore was adjudged by the Court not to be property exempt from execution and sale.

Having so found the facts, and upon the authority of the Circuit Judge's construction of the opinion of this Court in Little River Bank & Trust Company v. Johnson, 105 Fla. 212, 141 Sou. Rep. 141, the Court denied a motion filed by the City of Coral Gables under Section 4516 C. G. L., 2829 R. G. S., praying for a stay of the execution and for suspension of all proceedings thereon against the defendant in execution, the City of Coral Gables.

A writ of error with bill of exceptions, brings that judgment of the Circuit Court here for review, presenting for our determination, the question of law we have hereinbefore stated as being the major point in the case.

The bill of exceptions shows that the property levied upon was originally owned by Coral Gables Corporation, a private institution, and was operated by it in conjunction with a nine hole golf course and country club. While owned and operated by the Coral Gables Corporation, locker rooms, showers, lounging rooms, etc., were maintained and provided by the corporation for the use of golfers and club members. A dining room, open to the public, was also operated, wherein food was served for a charge made therefor. In addition to the foregoing, there was also a dance patio provided and maintained in connection therewith, wherein persons desiring

that form of entertainment could secure it upon payment of a like charge. All the while, the property was kept open to the general public, being subject only to the payment of charges for admission thereto.

In 1927 the golf course together with the country club property (consisting of the buildings) were purchased by the City of Coral Gables.

To accomplish this purchase, the city used the proceeds of a certain bond issue it had authorized, amounting to the sum of $1,750,000.00. For the purposes of the case now before the Court no question is raised as to either the power of the city to make this purchase, nor of the propriety of its act in so doing. Therefore for present purposes, it must be considered as established as a fact in the case that the city properly issued the bonds for a lawful municipal purpose in the first instance, and that the proceeds of such bonds were properly and legally invested by it in the purchase of the property in question. The proceeds of the bond issue are also to be considered as being now represented by the lands and buildings into which such bonds were converted by the purchase so made.

The operation of the golf course and country club properties did not prove to be profitable to the city. In consequence of this the country club premises were leased by the municipal authorities to one George C. Stembler.

Stembler bound himself by his lease to operate the property in his own name for a combined profit, if any, to himself and the city, a right of charge for the privileges furnished by himself being authorized to be made by the operator.

The Stembler lease was terminated at the end of two years. Thereafter the city leased the "country club" premises to another individual, who appears to have been operating it for his own private gain since that time,

under his contract of tenancy from the city, as a place of entertainment, combining dining room, dancing and other amusement features, all available to the public, but upon the basis of a charge therefor as fixed by the lessee.

The fact that the City of Coral Gables holds the title to the property levied on, is not disputed. Neither·is it denied that the city has retained power under its lease to resume control over the leasehold and thereafter itself operate the property concerned, in accordance with the plan and purpose for which it was acquired. It is also conceded that while at the time of the levy the City of Coral Gables was not itself operating the property levied upon nor was it doing so at the time the judgment was rendered and the execution issued thereon, that nevertheless such property continued to be held by the city as a part of the golf course and country club real estate bought by the city with the proceeds of the bond issue heretofore mentioned, to be thereafter held and used by the city for municipal and public, if not strictly and exclusively governmental purposes.

In Little River Bank & Trust Co. v. Johnson, *supra,* we held that *trust* property owned by a municipality *and held for public purposes,* cannot be reached by process and sold to satisfy its debts, any more than can other trust property be sold to satisfy individual debts of any other trustee. The instant case falls within that rule.

While in that opinion we also made reference to the fact that the foregoing rule had been "modified to some extent" by confining its application in general to property absolutely essential to the existence of the public corporation, or necessary and useful to the exercise and performance of governmental powers or to the performance of governmental duties, the present case finds no place within the scope of that exception.

Here the special legislative charter of the City of Coral Gables expressly authorized that municipality to ''acquire, and maintain and operate and or assist in maintaining and or operating aviation fields, playgrounds, golf courses, swimming pools, stadiums, auditoriums, libraries, aquariums, art museums, cultural and educational institutions.'' When the power so given to the city was exercised by it by the issuance of bonds and the investment of their proceeds in the golf course and country club property it later purchased, such property when acquired became charged with a *fixed, definite, continuing statutory trust* on the part of the municipality to hold, maintain and operate it for public municipal purposes of the character required by the charter enactment, subject to such future legislative control concerning its disposition, as might be exercised by the law-making power with respect thereto.

While it has been well said that in every instance a city holds all the property which it owns, as trustee for the public, there are certain classes of property which it may, by its express or implied charter powers, have become authorized to hold *as representative of the public, as well as for the use of the public itself.**

Properties authorized by statute to be acquired by a city in the exercise of its municipal powers of taxation, for such now generally recognized common municipal purposes as aviation fields, play-grounds, golf courses, stadiums, auditoriums, swimming pools, libraries, museums, and the like, are generally regarded as being so authorized to be acquired and held by cities and towns for the use and benefit of the public, *whose representative the municipality is* in acquiring and holding the title thereto as trustee.

The due performance of the duties imposed upon the

---

*See Werlein v. New Orleans, 177 U. S. 390, 44 L. Ed. 817.

municipality as the public representative, and as a public statutory trustee with regard to such properties, are such as may be appropriately held to be rendered by the municipality in its municipal capacity for the purpose of discharging in a general way the statutory duty which the municipality owes to the state, to the public and to its inhabitants, by reason of the legal obligations imposed upon it by its charter, under which it was empowered to exercise the state's power of taxation to make effective the statutory purpose.

Therefore properties of this kind when acquired and held by a city under its charter powers, become, and are, not only trust properties in the general sense in which all municipally owned property is held in trust, but in the further sense that they are properties held for the use of the city as representative of the public, for the public use, in the same sense that public streets, parks, squares and the like are generally regarded as held.

Municipal corporations are created for public, governmental and political purposes, and all property of whatever nature held by them in trust for carrying out such purposes is exempt from seizure and sale under execution; but the *private* property of a municipality, held for the purposes of income or sale, *unconnected with any governmental use or function,* may be levied on and sold to satisfy a judgment. Equitable Loan & Security Co. v. Edwardsville, 143 Ala. 182, 38 Sou. Rep. 1016, 111 Am. St. Rep. 34.*

Proof that land has been duly dedicated for a public square to the public use, and therefore withdrawn from commerce, will preclude the sale of such property under an execution upon a judgment against the city owning

---

*In this case a municipally owned liquor dispensary maintained and operated under legislative authority, was held exempt from seizure under execution on a judgment against the city authorized to own and operate it, and actually engaged in doing so under its powers.

it, when the exemption from levy and sale is duly and seasonably asserted against an attempt to reach it by execution. Werlein v. New Orleans, 177 U. S. 390, 44 L. Ed. 817.

But a municipal corporation, equally with a private corporation, may have its property taken in execution in payment of a judgment if payment is not otherwise made. But to authorize it to be so taken such property must be *unconnected* with any public function resting upon the municipal government, such for example, as property held for the purpose of income or sale.

Structures which are public property and held in trust by a municipality for specific public uses, authorized or required by law, cannot be seized and sold under execution to satisfy a judgment against the municipality owning and holding title to them as a public trustee. Darlington v. New York, 31 N. Y. 164, 88 Am. Dec. 248. But a creditor's suit will lie to reach, and subject to execution, property owned and held by a municipal corporation to which no exemption rightfully attaches. See Southern Ry. Co. v. Hartshorne, 150 Ala. 217, 43 Sou. Rep. 583.

In City of New Orleans v. Home Mutual Insurance Co., 23 La. Annual Rep. 61 (cited in our opinion in Little River Bank & Trust Co. v. Johnson, *supra,* in support of the exception to the general rule upon which the execution creditor relies here to support her seizure under execution) it was pointed out that neither taxes, nor the proceeds of tax levies, due a municipality, could be seized on execution, though bonds of a corporation merely owned by the city, and not essential to the·exercise of its functions as such, might be.

Under the authority of the case just cited, neither the municipal bonds issued by the City of Coral Gables for the purpose of purchasing the golf course and country

club here considered, nor the proceeds not the taxes levied to pay the same, could be seized under defendant in error's execution to pay her judgment against the city, had the purchase of the golf course and country club not yet been completed.

Not only could the proceeds of such bonds be not seized under execution to pay judgments against the city, but the city itself, having exercised its special powers of taxation to raise the moneys realized by the issuance of its bonds and having raised them for the specific purpose of accomplishing a definite municipal improvement, could not *voluntarily* divert such moneys to the payment of its judgments, without being guilty of a breach of public duty, unless so authorized by the legislature within the limits of its legislative powers in that respect.*

It would seem, therefore, upon principle, that if the bonds, and the proceeds thereof, and the taxes levied therefor, are all exempt from seizure and sale under execution to pay the general municipal debts of the City of Coral Gables, that the properties themselves after being acquired and held by the City through its investment of the bond proceeds, likewise must partake of, and continue to enjoy, the same immunity from execution so long as such properties are held by the municipality for general public purposes as representative of the public for whose benefit they were authorized to be acquired, unless otherwise provided by statute.

We are therefore of the opinion that the country club property levied upon by the sheriff and advertised for sale under the defendant in error's execution, at the time

---

*In a recent opinion by Mr. Justice Ellis (Oven v. Ausley, 106 Fla. 455, 143 So. 588, opinion filed August 17, 1932), it was stated by the Court: "When funds are raised by taxation for one purpose they cannot be diverted to some other purpose without legislative authority. When an enforced contribution is exacted from the people by the power of taxation, it is for a specific public purpose and the fund so raised is a trust fund in the hands of the legal custodians of it."

the motion in the court below for stay was made, was not shown to be subject to seizure and sale to satisfy defendant in error's judgment, and that upon appropriate procedure brought by the City of Coral Gables for that purpose, such attempted levy and sale should have been restrained.

But it is also the law that when a judgment is rendered against a municipal corporation, execution may be *ordered to issue* against it, as against a private person; and under such execution, though property held or used for recognized public purposes, of the character hereinbefore stated, cannot be seized, private property belonging to the corporation, and not useful or used for corporate purposes of a character to render it exempt, may be seized and sold. Therefore the Circuit Court which rendered defendant in error's judgment did not err in ordering its execution against the City of Coral Gables to issue on the judgment rendered against it. Neither did the Circuit Judge in this case err in refusing to perpetually stay such execution by ordering a suspension of proceedings thereon.

Section 4516 C. G. L., 2829 R. G. S., provides that the Court before which an execution is returnable may, on a motion and notice to the adverse party, for good cause, upon such terms as the court may impose, direct a stay of the same, and the suspension of proceedings thereon. The object of the statute was to expressly authorize courts of law to correct, restrain and control their own processes, either in term time or vacation, without resort to equity. Barnett v. Hickson, 52 Fla. 457, 41 Sou. Rep. 606; Barlett v. Cohn, 97 Fla. 256, 120 Sou. Rep. 357. See also Higgins v. Driggs, 21 Fla. 103.

But when an execution has been duly authorized and issued pursuant to a judgment regularly and validly rendered, and has been legally placed in the hands of an

officer for service, a motion under Section 4516 C. G. L., *supra,* does not lie to stay or suspend the execution in its entirety, on the ground that the officer charged with its enforcement has levied upon, and is about to sell under it, property which is exempt from the particular attempted levy to satisfy its commands.

Stays of execution in general are regarded as of three classes: (1) those which are ordered by the court in which the judgment is rendered, but not as the result of appellate proceedings, and which proceed upon the ground that for some good cause, the execution ought to be postponed, or execution should not take place at all; (2) those which are the consequences of, or attend, appellate proceedings; and (3) those which result from statutes granting the defendant further time ·in which to satisfy the judgment, upon giving security. See 10 R. C. L. pages 1248-1249.

Stays of execution authorized by Section 4516 C. G. L., *supra,* are of the first class, and they are authorized to be granted upon any circumstances disclosed to the Court from which it is clear that in order to prevent an abuse of the court's process, the *judgment* ought not to be further executed or enforced, or if execution be proper to be enforced, yet there is good reason why it should be postponed. 10 R. C. L., par. 43, pages 1248, 1249.

But a court, having power over its own process, may on motion to that effect, set aside a *levy,* of an execution on property not subject to be seized and sold to satisfy it, when all the parties are before the court. In such cases, however, the motion must be made in the court out of which the writ issued, all the parties must be before the court, and the motion must be confined to a prayer for quashing the particular *levy* to the extent that it is unauthorized, and must not seek to quash or

stay the entire execution when it is otherwise valid and sufficient as process on the judgment upon which it is issued. Holmes v. Marshall, 145 Cal. 777, 79 Pac. 534, 104 A. S. R. 86, 2 Ann. Cas. 88, 19 L. R. A. 67. And in cases of unauthorized levies upon non-subject real property, a remedy in equity may be appropriate in many cases. Blackshear Mfg. Co. v. McClenny, 75 Fla. 308, 78 Sou. Rep. 269.

In the case now before us on writ of error, the motion was filed under the statute hereinbefore referred to, and sought to have a stay of *all* the proceedings under the execution, as well as a perpetual stay of any other or further proceedings in the future. It was not a motion to quash or stay the particular *levy* which had been made pursuant to the execution.

As we have pointed out, the issuance of the execution was not unauthorized, though the property sought to be levied on in this particular instance, was not subject to seizure and sale under it. Therefore the Circuit Judge was not in error in refusing to grant the relief prayed. See Equitable Loan & Security Co. v. Edwardsville, *supra,* where the motion was to *vacate the levy,* upon the ground that the property levied on was property used by the defendant municipality for municipal purposes, and was therefore exempt from seizure and sale under the execution.

From what has been said, it follows that the judgment of the Circuit Court must be and the same is hereby affirmed, but without prejudice to any right the plaintiff in error may have to seek relief by other appropriate proceedings authorized by law.

Affirmed and constitutional writ issued in aid of writ of error dissolved.

WHITFIELD, P.J., AND TERRELL, J., concur.

Buford, C.J., and Brown, J., concur in the opinion and judgment.

Ellis, J., concurs specially.

Ellis, J. (Concurring specially).—While the City was authorized under the provisions of its Charter to acquire the Golf Course property and operate or assist in operating golf courses and did acquire property for such purposes by issuing bonds which were a city obligation, it does not follow that the lands and buildings so acquired for that purpose became exempt from sale under execution issued upon a judgment obtained against the city.

According to the facts as agreed to between the parties the City abandoned the management and operation of the golf course and leased it to a person who operated it for the joint profit of himself and the City. Upon the termination of that lease the City leased the premises to another who operates the golf course and uses the houses located upon it for his own private gain. It does not appear that the City obtains a rental therefor.

It thus appears that the City no longer holds the property for governmental purposes, even if it be conceded that a golf links may be regarded as a public utility and while maintained or operated by the City may be considered as property utilized in the exercise of a governmental function and not held in a proprietary capacity.

Subjecting the property in this case to the execution held by the defendant in error would in nowise suspend or impair the exercise of governmental functions by the City.

I do not agree to the theory held by the learned author of the majority opinion that the property of the golf course in the circumstances is held in trust for all the people of the municipality, which applies to such property only as is in daily use for the proper exercise of the governmental powers and functions of the City.

I therefore think that the order of the Circuit Judge upon the motion to stay the execution should be affirmed.

## On Petition for Rehearing.

Per Curiam.—While the trial judge did hold that the property involved was not property absolutely essential to the existence of the City of Coral Gables, or necessary and useful to the exercise and performance of its governmental powers, or the performance of its duties, it nevertheless indisputably appeared from the whole record that the property levied on under execution against the City of Coral Gables was property which represented an investment made by the City of Coral Gables of the proceeds of its bond issue which had been authorized by statute for acquisition of a golf course, and was therefore held by the City in its capacity as a statutory public trustee, which trusteeship of the City could not be defeated by the City's alleged express or implied abandonment of the trust, since a statutory public trust imposed on a municipal corporation cannot be thus lost or defeated.

The bonds of the city, the proceeds of the city's bonds, and the taxes levied to pay the same, all being admittedly exempt from execution for satisfaction of the city's general creditors, because of the public trust which would be defeated if the rule were otherwise, our holding is that the property which has been acquired by the city through the investment of the proceeds of the bonds, partakes of the same exempt character as the bonds themselves, as well as the proceeds and the taxes authorized by statute to be realized to make such investment possible.

The matter of rendering alleged surplus, abandoned or unnecessary municipal *trust* property subject to satisfaction of a municipality's debts is one exclusively within legislative control.

Until the legislative will is exercised to the contrary,

*a statutory trust in municipal property* set up and provided for by a legislative act, must be viewed by the courts as being intended to be continued and protected by the courts from being defeated either through the positive action or alleged inaction or abandonment, of the municipal corporation which has been made by the Legislature a public trustee for publicly owned property.

Payment of appellee's judgment is not defeated by adhering to such rule since appellee has her plain, adequate and complete remedy against the City of Coral Gables by pursuing legal means ordinarily available to a judgment creditor of a municipal corporation which makes no provision to pay judgments which have been rendered against it.

Rehearing denied.

BUFORD, C.J., AND WHITFIELD, TERRELL AND DAVIS, J.J., concur.

ELLIS AND BROWN, J.J., dissent.

BROWN, J. (Dissenting).—Upon a reconsideration of this cause on petition for rehearing the writer is inclined to the view that we were in error in holding in the original opinion that the property in question could not be levied upon because it was purchased by the city with the proceeds of a bond issue floated for a municipal purpose. The test is the nature of the municipal purpose for which the property was acquired, and the use to which the property is put or the use or purpose for which it is in good faith being held. Whether a city purchases property with general funds on hand in its treasury, or whether it purchases property with money raised by a bond issue, is, I believe, immaterial to the question involved in this case. There are many ways in which a city may acquire property. 43 C. J. 1337. The method is not so important. It is the purpose which controls. I am inclined to concur in the special concurring opinion heretofore filed herein by

MR. JUSTICE ELLIS in that regard. While it is true that a city cannot lawfully purchase any property for other than a municipal purpose of some sort, whether that purpose be private and proprietary or governmental and public, it may, within the limits of its charter powers, acquire property, and hold it, in either of these capacities. 43 C. J. 179-184, 1333-4. If it acquires and holds or uses property for governmental purposes, such property is not subject to levy and sale under execution, but as to property acquired, or held and used by it purely in its private or proprietary capacity, unconnected with any governmental or public use or function, such exemption from levy and sale to satisfy a judgment does not apply, regardless of the means used by the city to acquire the property, whether it be by bond issue or purchase for cash.

In 19 R. C. L. at page 1050 it is said:

"It is well settled that when a creditor has secured judgment against a municipal corporation, and taken out execution, he cannot levy upon property of the corporation which is devoted to public uses, such as public buildings, streets, squares, parks, promenades, wharves, landing places, fire engines, hose and hose carriages, engine houses, engineering instruments, and generally everything held for better known purposes or upon the general revenues of a corporation or upon funds devoted to any of the foregoing purposes. This rule is based upon obvious principles of public policy, and is not a peculiar or special privilege of municipal corporations, and consequently does not extend to property of a municipal corporation which is held by the corporation in its private or proprietary capacity and is not devoted to any public use."

In 23 C. J. 355, it is said:

"Where property of a municipal or other public corporation is sought to be subjected to execution to satisfy judgments recovered against such corporation, the question as to whether such property is leviable or not is to be determined by the usage and purposes for which

it is held. The rule is that property held for public uses, such as public buildings, streets, squares, parks, promenades, wharves, landing places, fire engines, hose and hose carriages, engine house, public markets, hospitals, cemeteries, and generally everything held for governmental purposes, is not subject to levy and sale under execution against such corporation. The rule also applies to funds in the hands of a public officer. Likewise it has been held that taxes due to a municipal corporation or county cannot be seized under execution by a creditor of such corporation. But where a municipal corporation or county owns in its proprietary, as distinguished from its public or governmental capacity, property not useful or used for a public purpose but for quasi-private purposes, the general rule is that such property may be seized and sold under execution against the corporation, precisely as similar property of individuals is seized and sold. But property held for public purposes is not subject to execution merely because it is temporarily used for private purposes, although if the public use is wholly abandoned it becomes subject to execution.''

See also Dillon on Municipal Corporation, Volume 2, page 572, and 20 American and English Encyclopedia of Law, 1190.

Even if it be admitted that the City of Coral Gables had the power under its charter to acquire by purchase from the Coral Gables Corporation the nine hole golf course and club house connected therewith, containing locker rooms, shower baths, and so forth, it appears that for some time prior to the levy of the execution, the club house had been leased out to a private individual for the purposes stated in the original opinion, and it also appears that the city had erected a small building for locker rooms on a part of the golf course itself, and that thereafter the premises in question in this case "were not used in connection with golf." (See agreed statement of facts, page 11 of transcript). If this were all that appeared in the record, the

holding of the lower court that this particular property was at the time of the levy of the execution private property of the municipality, held for purposes of income unconnected with any governmental use or function, and was therefore subject to the execution, might be upheld. See Darlington vs. Mayor of New York, 31 N. Y. 164, 84 Am. Dec. 248; Beadles v. Fry (Okla.), 2 L. R. A. (N. S.) 855; Meriwether v. Garrett, 102 U. S. 472, 26 Law. Ed. 197, 206; Murphree v. Mobile, 108 Ala. 663, 18 So. 740.

I hardly think that this position is inconsistent with the opinion of MR. JUSTICE DAVIS in the case of Little River Bank & Trust Company vs. Johnson, 105 Fla. 212, 141 So. 141, wherein it was said:

"The property of a public corporation acquired by it for public purposes, and in its capacity as a governmental agent, is held in trust for the public for the uses and purposes for which acquired. City of Alton v. Illinois Transp. Co., 12 Ill. 38, 52 Am. Dec. 479; City of Oakland v. Oakland Water Front Co., 118 Cal. 160, 50 P. 277; City of Salem v. Lane, 90 Ill. App. 560; Egerton v. Third Municipality, 1 La. Ann. 435; Carter v. State, 42 La. Ann. 927, 8 So. 836, 21 Am. So. Rep. 404; Darling v. Mayor, etc., of City of Baltimore, 51 Md. 1.

Trust property owned by a municipality and held for public purposes cannot be reached by process and sold to satisfy its debts any more than can any other trust property be sold to satisfy individual debts of any other trustee. Ransom v. Boal, 29 Iowa 68, 4 An. Rep. 195. A judgment against a municipality, therefore, in the absence of express statutory provisions, cannot be enforced by execution; neither is it a lien upon any of its property. Weaver v. Ogden City (C. C.) Ill. F. 323; Meriwether v. Garrett, 102 U. S. 472, 26 Law. Ed. 197. Nor can private property of the inhabitants of a municipality be seized under execution for its debts. City of Chicago v. Sansum, 87 Ill. 182; Emeric v. Gilman, 10 Cal. 404, 70 Am. Dec. 742; Lockard v. Board

of Com.'rs of Decatur County, 10 Kan. App. 316, 62 P. 547; Alter v. State, 62 Neb. 239, 86 N. W. 1080.

"This principle has been universally adopted on the grounds of public policy, since it is not considered permissible or advisable that the state or its governmental subdivisions should be hampered or prevented through a loss of its public property from exercising its public powers or carrying out its governmental functions. It has, however, been modified to some extent by confining its application to property absolutely essential to the existence of the public corporation, or necessary and useful to the exercise and performance of governmental powers, or the performance of governmental duties. City of New Orleans v. Home Mutual Life Ins. Co., 23 La. Ann. 61; Darlington v. City of New York, 31 N. Y. 164, 88 Am. Dec. 248; Mayor etc., of City of Birmingham v. Rumsay, 63 Ala. 352."

It is settled in this State that the Legislature may authorize municipalities to purchase and maintain golf courses in the interest of the local public, thereby declaring this to be a municipal purpose. City of Bradenton v. State, 102 So. 556, 88 Fla. 381. It was said in the opinion in that case that this might be done "to further a commendable policy in conserving the general welfare, of encouraging the development and use of the pleasure and health-giving attributes of the State that make Florida a blessing to residents and peculiarly attractive to those who live elsewhere." It would seem therefore, that in the acquirement and holding of property for the construction or maintenance of a golf course, and the building, equipment and conveniences which usually go with such properties, such as club houses, locker rooms, dining rooms, etc., a municipality is not engaged in a purely private or proprietary function or business, entirely unconnected with any public or governmental function. The exercise of this power is closely akin to the power of owning and maintaining public parks. However, I gather from the author-

ities that if property acquired by a city for legitimate municipal and public purpose is afterwards put to another and different use and the original public purpose for which the property was acquired is permanently abandoned and the property is held by the city purely in its proprietary and private corporate capacity, entirely disassociated from any governmental or public use, such property then becomes subject to the levy of an execution. However, a mere temporary use of the property for a purpose other than that for which it was acquired would not have this effect. As it was said in 20 C. J. 355, ''But property held for public purposes is not subject to execution merely because it is temporarily used for private purposes, although if the public use is wholly abandoned it becomes subject to execution.'' See City of New Orleans vs. Werlein (La.) 24 So. 232; Klein vs. City of New Orleans, 99 U. S. 149, 25 Law. Ed. 430. In the last cited case it was held that the mere fact that land held by a municipal corporation for a public purpose was being rented out to private parties, the ground rents becoming meanwhile a part of the public revenues, would not render the land liable to be levied on and sold under execution.

Although it appears that the property levied on in this case, the lot on which the club house stood, was being leased by the city to a private individual for profit, it does not clearly appear from the record that it was the purpose or intention of the city to permanently abandon the use of such club house, or the ground on which it rested, as appurtenant to and in connection with the operation of the golf course, which was the original public purpose for which it was acquired. Indeed, the agreed statement of fact upon which the case was tried contains this statement: ''Although the City of Coral Gables is not now operating said property, it may, if it deems it advisable, upon the termination of the present lease, make such other leases

as it desires, or may itself operate said Club as it formerly did.''

It is quite possible that during these past few years, when many of our municipalities have been financially embarrassed, they have had to resort to the temporary expedient of renting out for private use properties acquired and designed for legitimate public purposes, in order to replenish to some extent the depleted revenues of such distressed municipalities. They should not be penalized for this unless it is made to appear that the public use of the property has in fact been abandoned, not merely temporarily, but to all intents and purposes, permanently so.

For these reasons I concur in the judgment heretofore rendered by this court but I am inclined to think that our original opinion should, on this petition for rehearing, be amended and modified in the respects above pointed out, and upon such modification being made that the petition for rehearing should be denied.