### HELEN HOPERICH v. CITY OF SEBRING.

161 So. 275.
Opinion Filed May 7, 1935.

*Fairfax T. Haskins,* for Plaintiff in Error;

*W. H. Hollman* and *Huffaker & Edwards,* for Defendant in Error.

PER CURIAM.—Writ of error brings for review a judgment in favor of the City of Sebring in proceedings to stay execution which had been levied pursuant to judgment on certain property belonging to the city.

The case was tried on stipulation of facts, the salient part of which was as follows:

"On the 13th day of July, A. D. 1926, ordinance No. 117 of said city was passed and approved, among other things for the purpose of erecting a city hall, a police and fire station, and an election was therein provided for the purpose of voting upon the issuance of bonds in the sum of $60,000.00 for erecting and equipping a city hall, $50,000.00 for erecting and equipping a fire station; pursuant to said ordinance an election was held in the City of Sebring on the 17th day of September, 1926, and resulted as follows:

"A majority vote was cast for issuing each and all of the bonds provided for by Ordinance No. 117 as shown by return of the election recorded in minute book 68 of September 17th, 1926; on the 5th day of October, 1926, as shown on page 70, minute book of that day, a resolution was passed authorizing issuance thereof for sale of said bonds.; pursuant to notice of sale said bonds were bid in by Stranahan, Harris and Oatis at 92 cents on the dollar, and that the purchaser thereof paid in cash to said city the total amount bid for the bonds and that the funds were deposited in the First National Bank of Sebring and in Highlands Bank and Trust Company on or about the 8th day of January, 1927, wherein said money remained until paid as hereinafter shown; that subsequent to the sale of said bonds the city council determined by resolution that instead of erecting a city hall and police station that it caused to be passed in the Legislature Chapter 13412, Special Act of Legislature of 1927, authorizing the city council of the City of Sebring to apply the proceeds of said bond issue for the purpose of acquiring suitable improved property for a combined city hall, police and fire station; thereafter on the 24th day of December, 1928, pursuant to Chapter 13412 and pursuant to resolution of

City of Sebring, a copy of which is attached to the motion for stay as exhibit A, the City of Sebring purchased lots 3 and 4, Block 63, located in the City of Sebring, County of Highlands, State of Florida, known as the 'Brown Building' and J. B. Brown, the owner of said property made, executed and delivered to said city the warranty deed of said property which is dated December 28, 1928, and was recorded the 14th day of January, 1929, in deed book 44, page 537, public records of Highlands County, Florida; that the City of Sebring purchased said property and paid to the seller as consideration therefor the sum of $37,000.00, of which sum was paid out of proceeds of the money derived from the sale of bonds authorized by ordinance No. 117 for the purpose of a city hall and police station; that when purchasing said property there was located thereon a two-story building and on or about the time of the delivery of said deed the city council and all of the officials of said municipal corporation entered into and occupied said 'Brown Building' as a city hall and police station and continued to occupy same and use it as such from that time until on or about the 15th day of April, A. D. 1931, at which time the city moved its offices to another building it had purchased from the receiver of a defunct bank, namely the First National Bank, and now occupies and uses building formerly known as First National Bank Building for a city hall. However, on the 8th day of August, 1933, the day after levy, execution on which is now sought to be stayed, the police station was moved from said bank building to the said 'Brown Building' and now occupies one room therein which was formerly used as a city hall;

"That from time of purchase by the City of Sebring of the property on which stay of execution is now sought only approximately one-fourth of said property was used or oc-

cupied by the City of Sebring as and for a city hall or for municipal or governmental purposes, but that since the purchase of said property to April 15, 1931, the major portion of said property was either vacant or leased to tenants and that the Chamber of Commerce was permitted or allowed to occupy two small rooms in said property; that since April 15, 1933, to August 8, 1933, no part or portion of the building, against which stay of execution is now sought, was occupied by the City of Sebring as and for a city· hall, all of said property being either leased for rental or vacant, the Chamber of Commerce being permitted and allowed to occupy two rooms for office therein; that while located on the southerly end of said property, in which stay of execution is now sought, the two rooms which the Chamber of Commerce were permitted or allowed to occupy as offices are in building separate and distinct from main building situate on said lot or lots, and of which main building the said City of Sebring formerly occupied a portion as aforesaid as and for a city hall;

. "That the building formerly known as the First National Bank building has been used as a city hall from April 15, 1931, to date and during such period contained all city offices and departmental heads except police station, which was moved on August 8, 1933, from said present city hall back into the premises against which stay of execution is now sought, that since the purchase and occupancy of said bank building as and for a city hall on April 15, 1931, to date the city has used the same for and as a city hall, but in so doing has occupied only slightly less than one-half of said premises as and for a city hall, or for municipal or governmental purposes and that slightly more than one-half of said premises have either been leased to tenants or have re-

mained vacant, to-wit: portions of premises described in traverse filed in this cause:"

It is established by the stipulation that the property upon which execution was levied was purchased by authority of a legislative Act for a city hall and police station with funds derived from a bond issue which bonds were issued for the purpose of acquiring a city hall, police station and fire station.

The property, therefore, became upon its purchase statutory trust property as defined in City of Coral Gables v. Hopkins, 107 Fla. 778, 144 Sou. 385.

The record does not show that legislative authority has ever been granted the City of Sebring to abandon or dispose of this trust property. Whether or not the City of Sebring had authority to purchase the bank building referred to for use as a new city hall is not involved in this case. We think it is not needful for us to discuss the principles of law involved as they are fully discussed in the case of City of Coral Gables v. Hopkins, *supra,* and on authority of the opinion and judgment in that case, the judgment involved here should be affirmed.

It is so ordered.

Affirmed.

WHITFIELD, C. J., and TERRELL, BUFORD and DAVIS, J. J., concur.

ELLIS, J., concurs specially in conclusion.

BROWN, J., concurs specially.

ELLIS, P. J. (concurring).—As applied to property owned by a city, I am of the opinion that there is no such class of municipally held property as "statutory trust property" as distinguished from property which the city owns for governmental and public purposes. All such property held by the city for governmental or public purposes may be

said to be "trust property"; and as the city exists by virtue of a statute, and has its powers only under a statute, all "trust property" held by the city may be said to be statutory trust property. The theory, however, that property acquired by the city for any purpose, governmental or proprietary, becomes invested with a mystical virtue of immunity ·from sale under execution merely because it was purchased with the proceeds of the sale of city bonds authorized to be issued by statute has no foundation in law or justification in reason.

The issue of bonds by a city is merely the exercise in the last analysis of the power of taxation where the bonds are a general city obligation. Cities have only two functions, governmental and proprietary. A city can only acquire property by purchase. It cannot inherit property. When it acquires property it usually does so by the expenditure of money raised by taxation, which is the same as acquiring it by the proceeds of the sale of bonds which must be redeemed by taxation. If the property so acquired is for a governmental purpose and used to that end it is not subject to sale under execution. The title is held in trust for the people and is not subject to sale under execution. If the property is acquired by the city in a proprietary capacity it is not held in trust but held in a proprietary capacity. In the latter case so long as its use is devoted to a public service of a character which the statute authorizes it is immune from levy and sale under execution.

Now property held by the city in a governmental capacity or in trust may be abandoned and when abandoned by the city it may be subject to levy and sale under execution. The same is true as to property held in a proprietary capacity by the city and devoted to a public use or service. Circumstances which might constitute abandonment in the latter

case would not be sufficient to establish abandonment in the former.

In my opinion, therefore, the question resolves itself into one of the degrees of proof to establish abandonment of property acquired under the law for governmental purposes and in such capacity.

The evidence is not sufficient in this case to show abandonment by the city of property sought to be subjected to the execution.

I do not agree with the doctrine announced nor the reasoning employed to support it in the case of City of Coral Gables v. Hopkins, 107 Fla. 778, 144 Sou. Rep. 385. My views were expressed in that case in a concurring opinion.

BROWN, J. (concurring).—While I have not changed my views, as expressed in my dissenting opinion in the case of City of Coral Gables v. Hopkins, cited in the majority opinion, and which are quite similar, to those set forth in the special concurring opinion of Presiding Justice ELLIS in this case, I concur in the conclusion reached by the majority because of the precedent already established and also for the additional reason stated in the special concurring opinion of Mr. Justice ELLIS referred to.